10 CIV 3105

JUDGE BERMAN

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Samuel R. Miller (SM 2511)
Lewis M. Steel (LS 4463)
Ossai Miazad (OM 1127)
Rachel M. Bien (RB 6919)
Melissa Pierre-Louis (MP 4946)
3 Park Avenue, 29th Floor
New York, NY 10016

**COMMUNITY SERVICE SOCIETY**
Judy Whiting (JW 8665)
Paul Keefe (PK 1618)
105 East 22nd Street
New York, NY 10010

**COMMUNITY LEGAL SERVICES, INC.**
Sharon Dietrich*
1424 Chestnut Street
Philadelphia, PA 19102

**LatinoJustice PRLDEF**
Richard Bellman (RB 0049)
Jackson Chin (JC 3494)
99 Hudson Street, 14th Floor
New York, NY 10013

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
Audrey Wiggins*
Sarah Crawford*
1401 New York Ave., NW
Washington, DC 20005

**CENTER FOR CONSTITUTIONAL RIGHTS**
Anjana Samant (AS 5163)
Darius Charney (DC 1619)
666 Broadway 7th Floor
New York, NY 10012

**INDIAN LEGAL RESOURCE CENTER**
Robert T. Coulter*
602 North Ewing Street
Helena, MT 59601

**PUBLIC CITIZEN LITIGATION GROUP**
Mike Kirkpatrick*
1600 20th St. NW
Washington, DC 20009

* pro hac vice application forthcoming

RECEIVED
APR 13 2010
U.S.D.C. S.D.N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EUGENE JOHNSON and EVELYN HOUSER,
on behalf of themselves and all others similarly situated,

         Plaintiffs,

    v.

GARY LOCKE, Secretary, United States Department of Commerce,

         Defendant.

**CLASS ACTION COMPLAINT**

Individual and Representative Plaintiffs Eugene Johnson and Evelyn Houser

("Plaintiffs"), individually and on behalf of all others similarly situated, allege, upon personal

knowledge as to themselves and upon information and belief as to other matters, as follows:

## SUMMARY OF THE CLAIM

1.      Within the last twelve months, the United States Census Bureau ("Census") began

hiring more than one million temporary workers to complete the 2010 census.  As a precondition

of employment, Census requires all job applicants to produce within 30 days the "official court

documentation" for any arrest record—regardless of whether a conviction resulted, the nature of

the arrest, its relationship to the job, or its temporal scope.  Because this employment practice has

significant adverse impact upon African Americans, Latinos, and Native Americans, and it is

neither job related nor a business necessity, it is unlawful under Title VII of the Civil Rights Act.

## PRELIMINARY STATEMENT

2.      The United States Constitution requires the federal government to conduct a

census of the entire population every ten years.  The work conducted by Census forms a

cornerstone of our democracy, serving as the basis for determining representation in the House of

Representatives, informing the drawing of voting districts, and allocating substantial amounts of

federal funding.  It is imperative that the work of the Census be done accurately and in a manner

that is fair and free of discrimination for all individuals and communities.

3.      That imperative must apply consistently not only to the counting work at the core

of Census' mission, but also to the way in which Census hires its workforce.  If this hiring were

done appropriately, Census would identify the most qualified workers and screen out those who

pose a legitimate risk to public safety and the integrity of the census. Unfortunately, that is not

the case.

4.      All applicants, whether or not they will work with the public, who have an arrest

1

record for any offense at any point in their lives—no matter how trivial or disconnected from the requirements of the job—face an arbitrary barrier to employment. Census requires that within 30 days, these particular applicants must produce the "official court documentation" of all arrests to remain eligible for employment. Because of the difficulty, and often impossibility, of obtaining such proof, many people who have *never* been prosecuted or convicted are deterred or excluded outright from working for Census. This is no small matter, as roughly a quarter of the U.S. adult population has a criminal record, yet over 35% of all arrests nationwide never lead to prosecution or conviction.

5.      Census' screening procedure also unfairly deters or excludes many people with old and minor convictions for non-criminal offenses, misdemeanors, and other crimes that do not involve violence or dishonesty, all of which bear no relationship to the fieldwork or desk job for which they applied. In essence, Census requires applicants with an arrest record to provide official documentation even when the underlying conviction is irrelevant to the requirements of the job.

6.      Because the arrest and conviction rates of African Americans, Latinos, and Native Americans far exceed those of whites nationwide, Census' use of an arbitrary pre-employment screen has the result of discriminating on the basis of race, ethnicity, color, and national origin. Thus, Plaintiffs bring this class action suit pursuant to Title VII of the Civil Rights Act of 1964.

7.      Census jobs, though temporary, are very desirable. This is especially true in 2010, due to historically high unemployment rates, especially in the low-wage labor market, reaching levels exceeding 30%, with corresponding underemployment rates over 20%. These jobs also pay relatively well; for example, Census workers in Philadelphia are paid $17.75 per hour, and throughout the New York City metropolitan area they are paid $18.75 per hour.

8.      Plaintiffs seek simple changes to Census' hiring process that not only will reduce

2

its discriminatory effects, but will promote the public interest by expanding Census' hiring base in historically under-counted communities, thereby helping to achieve Defendant's mandated goal of counting all who live in the United States.

**CLASS DEFINITION**

9.      Plaintiffs bring this case as a class action under Federal Rules of Civil Procedure 23(a) and (b)(2), on behalf of the following class:

> All African American, Latino, and Native American persons who applied for temporary employment with the United States Census Bureau for positions including but not limited to Census Takers (also known as Enumerators), Census Crew Leaders, Recruiting Assistants, and/or Clerks, who were sent a 30-day notice to produce official court documentation or fingerprints, for whom there is no record of conviction (excluding those with charges pending at the time of application), or who are otherwise suitable for employment based on the Census Bureau's criminal background exclusion factors, and who were not hired by the Census Bureau, between the commencement of temporary hiring for the 2010 census and the date of judgment in this action ("the Class").

**JURISDICTION, VENUE, AND ADMINISTRATIVE REQUIREMENTS**

10.      The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4) as this claim arose under the Constitution, laws, or treaties of the United States, and under § 717 of Title VII, 42 U.S.C. § 2000e-16(c).

11.      Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), because Defendant's unlawful employment practice was committed in Manhattan, employment records relevant to Defendant's illegal actions are maintained and administered in New York City, and Plaintiff Eugene Johnson would have worked in New York City but for Defendant's unlawful employment practice.  Additionally, venue is proper pursuant to 42 U.S.C. § 1391(e)(3) because

3

Mr. Johnson resides within this judicial District.

      12.     On August 10, 2009, Plaintiff Evelyn Houser filed an Informal EEO Complaint based on her denial of temporary employment with Census. Ms. Houser explicitly challenged the policy employed by Census of excluding applicants with criminal history as having a racially disparate impact in violation of Title VII, and included in her complaint references to the three EEOC Guidance statements bearing on the use of arrest and criminal conviction records in employment. On August 28, 2009, Ms. Houser filed a timely written Charge of Discrimination with the Equal Employment Opportunity Office of the Department of Commerce ("EEO Office"). On September 29, 2009, the EEO Office rejected that charge by issuing a Final Agency Decision dismissing Ms. Houser's complaint. Plaintiff appealed that decision to the Board of Review of the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Decision on January 29, 2010, which Plaintiff received on or about February 1, 2010. The EEOC Decision explicitly provides that Plaintiff has the right to file a civil action in federal District Court within ninety calendar days from the receipt of the Decision.

      13.     In addition, Defendant has been on notice from the EEOC and other deterred and excluded applicants for over a year of the class-wide discriminatory impact of Census' criminal background screening policy. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL BACKGROUND

      14.     Roughly four million people are applying for more than one million temporary positions for the 2010 census. Some of these positions—Census Takers (also known as Enumerators), Census Crew Leaders, and Recruiting Assistants—involve interacting with the public. Another position, as Clerk, involves office work, where employees have no personal interaction with the public. Each applicant takes a written test and completes an application,

which includes a question as to whether the individual has been convicted of a crime within the past 10 years. Census then conducts an FBI background check on all applicants, which searches for all arrests, regardless of whether a conviction resulted, and has no time limitation. Census requires that within less than 30 days of being notified of a match in the FBI database, all applicants with an FBI record must produce the "official court documentation" of all arrests to remain eligible for employment, even where an individual's record shows no disqualifying criminal activity on its face. This unnecessary administrative barrier, which easily could be removed without harming Census' obligation to create a safe and effective temporary workforce, is the mechanism at the heart of this case.

### A. The FBI Background Check

15.     To conduct the background check, Census runs each applicant's name (and other personal identifiers) through the Federal Bureau of Investigation (FBI) Criminal Justice Information Services Division's Name Index (the "FBI database"). The database is enormous. Law enforcement agencies across the United States arrest approximately 14 million people per year, and over 70 million people in the country, well over 20% of the adult population, have a criminal record. Virtually all of these arrests remain in the FBI database forever.

16.     As Census knows well, and as reported by the U.S. Department of Justice's Bureau of Justice Statistics, the FBI database is *missing* final disposition information for roughly *half* of all of its arrest records. Thus, for millions of people, their entire criminal history consists of having been arrested and fingerprinted, but never convicted. These quick releases may occur due to circumstances such as the police picking up the wrong person, participating in a protest, lack of evidence, or determining that someone made a false crime report. Often, upon review of the facts, the district attorney declines to prosecute the case and the investigation is terminated. Indeed, the total number of prosecutorial declinations on an annual basis is over half a million

5

nationwide. Others in the FBI database have actually gone to trial and been found not guilty by a jury of their peers, yet even these individuals may have no record of a disposition.

### B. Census' Concealed Suitability Policy

17.     The actual test used by Census to determine each applicant's suitability based on criminal history has been carefully concealed from public view. Census Bureau Director Robert Groves has provided just a scant outline, stating that Census automatically disqualifies: (1) any applicant with a prior conviction or pending charge for "certain categories of crimes, such as murder, sex offenses, robbery, voter fraud, or other crimes that suggest a threat to safety or the integrity of census data;" and (2) any applicant with a prior conviction or pending charge for crimes of "dishonesty," burglary, theft, or vandalism, "except when the person conclusively demonstrates that he or she does not present a current threat."

18.     The law is quite clear that Census cannot disqualify applicants based on arrest charges alone (unless the charge is pending, in which case a conviction may still result). The federal government recognizes that restrictions on hiring individuals on the basis of arrest records are discriminatory and illegal.  The 1990 EEOC Policy Guidance ("EEOC Guidance") on the use of arrest records for employment decisions states: "[A]rrests alone are not reliable evidence that a person has actually committed a crime." The Guidance relies upon the Supreme Court decision in *Schware v. Board of Bar Examiners*, 353 U.S. 232, 241 (1957), holding that "[t]he mere fact that a [person] has been arrested has very little, if any, probative value in showing that he has engaged in misconduct." The EEOC Guidance further addresses the precise situation presented in this case: "Even where there is no direct evidence that an employer used an arrest record in an employment decision, a pre-employment inquiry regarding arrest records may violate Title VII. It is generally presumed that an employer only asks questions which he/she deems relevant to the employment decision." Additionally, the Department of Justice recognizes that it is improper to

6

stigmatize arrestees as criminals, and considers any arrest without disposition, where one year or

more has elapsed from the date of arrest with no active prosecution of the charge, to be a

"nonconviction." 28 C.F.R. Ch. I, sec. 20.3(q).

19.     From Director Groves' statement it appears as well that certain serious crimes of

violence and dishonesty result in exclusion, and that Census has a procedure to demonstrate

rehabilitation. Since the application form asks only about criminal activity in the past 10 years,

Census appears to have a temporal limit, or at least guideline, for exclusion as well.

Beyond these general parameters, Census refuses to tell applicants, the general public, or even a

congressional oversight committee, which crimes in particular mandate exclusion; whether there

is any temporal limitation, including whether juvenile records can be considered; whether any

distinction is made between non-criminal offenses, misdemeanors, and felonies; and any other

factors it deems relevant to the determination.

### C. Census' Employment Screening Process

20.     Each Census applicant whose name has a match in the FBI database is sent a form

letter, which states in substance as follows:

> A. If you do not dispute the identity of the arrest record in question, provide
> OFFICIAL COURT documentation on any and all arrest(s) and/or conviction(s) in
> your past; B. If you wish to dispute the identity of the arrest record in question,
> you may provide a set of original fingerprints...

Plaintiffs refer to this as the "30-day letter."

21.     On its face, the 30-day letter has two fatal flaws: (a) the letter screens applicants

with arrests but no convictions, and (b) the letter requires documentation of "any and all" arrests,

even though Census' stated policy is to address only a conviction or pending charge "that affects

hiring eligibility." In other words, the 30-day letter places a substantial burden on class members

whose FBI record—even if assumed to be 100% true—would not make the applicant excludable

7

under well-established legal precedent barring the use of arrest-only records, and under Census'

own criminal background policy. There can be no justification for creating a hurdle for

individuals to supply official court records of arrests, at a significant cost, that by Census' own

definition should not lead to an adverse employment decision.  The screen also violates the

Department of Justice's directive disapproving any employer policy that requests that applicants

obtain official certification of no criminal record.  28 C.F.R. Ch. I, sec. 20.21(c)(2), pp. 414, 421.

22.    The 30-day letter also fails to identify for the applicant the purported criminal

activity found in the FBI database search that is the basis for Census' concern, thereby sending

the applicant on an often futile exploration for records of any police interaction in their past. The

older and less serious those records, the more difficult they are to find, placing a greater burden

on those applicants whose history least approximates actual risk, like the named plaintiffs in this

suit.

**PARTIES**

23.    Plaintiff **Eugene Johnson** applied to the Census local office in Manhattan, New

York on or about January 13, 2010.  Mr. Johnson, who is 48 years old, is an African American

resident of the Bronx who has lived in New York City all his life.

24.    Mr. Johnson has an extensive work history in positions involving direct contact

and interaction with the public, making him well-qualified to take on a Census Taker position.

His many years of contract work in the field of market research, for firms including Harris

Interactive (helping to conduct various Harris Polls) and CMR Market Research, and his work

performing research with the Coalition for the Homeless, have given him invaluable experience

in communicating with the public and gaining people's trust so that they answer questionnaires

accurately.  In addition, he has developed sales and marketing experience in his positions as an

office supply salesperson for Standard Technology and as an independent sales contractor for

8

Click Bank. For the past four years, to supplement his income from his contract positions, Mr. Johnson has worked part-time for Newman & Leventhal Caterers, a company that caters upscale events at locations including the Waldorf Astoria Hotel and the Park Avenue Synagogue.

25.     Mr. Johnson would be equally suited to an office position with Census. Having earned a GED in 1980, he has taken college courses through the State University of New York's Manhattan and Brooklyn Educational Opportunity Centers, where he is currently enrolled in a finance course. He is trained and skilled at data entry, and worked in this field for the Coalition for the Homeless. He also has training, interest and experience in radio broadcasting, and through this work and market research positions has developed skills at conducting telephone interviews and explaining complex concepts in simple terms.

26.     Mr. Johnson was arrested on misdemeanor assault charges in 1995, stemming from a dispute with his landlord concerning the rent due on his apartment. Mr. Johnson was convicted of the charges after a very brief bench trial in 1996, but was sentenced to perform community service and pay restitution rather than serve any time in jail. He complied with this sentence.

27.     Census sent Mr. Johnson the 30-day letter on January 25, 2010; he received it several days thereafter. He went to the New York City Criminal Court and obtained an official disposition slip for his conviction. That document was ink-stamped "Sealed After Conviction." Reading this disposition slip and believing his conviction to have been sealed, Mr. Johnson sent the document to Census on February 22, 2010—the same day he received it—together with a letter discussing the conviction and explaining his interest in and qualifications for Census work. Mr. Johnson subsequently learned that the ink-stamp was placed on the slip in error and that his conviction is not sealed.

28.     To this date, Mr. Johnson has received no response to his February 22 letter and

9

has not been hired by Census. He currently works part-time and is interested in and available to work for Census if hired.

29.     Plaintiff **Evelyn Houser** is a 69 year old African American resident of Philadelphia, Pennsylvania. Ms. Houser has lived in Philadelphia for decades, and has contributed to her community as a block captain, committee person, and poll worker. Ms. Houser is presently retired, but has a life-long history of work in housekeeping, security and office positions, counseling, home health aide positions, data entry, and retail. She has also raised four children on her own.

30.     Ms. Houser worked for Census in 1990. She started as a Census Taker, and then was given an office job, where she was involved in hiring, including helping to perform background checks, interviewing candidates, and speaking with job applicants on the telephone. She performed both jobs well.

31.     After applying for a temporary position for the 2010 census, Ms. Houser received the 30-day letter in March 2009. Census did not provide Ms. Houser with a copy of the arrest record about which it was requesting information. As a result, Ms. Houser did not know with certainty what was on the record to which she was expected to respond. On March 31, 2009, Ms. Houser obtained a set of her fingerprints. She mailed them to Census on or about the same day, which was within the 30-day period in which Census requested a response to its letter. Ms. Houser believed that providing the fingerprints was a satisfactory response to the 30-day letter. She did not understand that she might have to provide court documentation to comply with Census' requests.

32.     Census denied Ms. Houser's application. By letter dated May 21, 2009, Census informed Ms. Houser that she had not provided the requested information within 30 days. It also stated that as a result of her failure to act as requested, she was no longer being considered for

employment. Ms. Houser then appealed to the EEO office of the Department of Commerce, and then to the EEOC, as discussed above. Ms. Houser remains available to work for Census if she were to be hired.

33. Ms. Houser has a 1981 case for theft and forgery. The case involved a single check she that had found near a dumpster. Because she was desperate for money for her family, she cashed it. In the 1981 criminal case, Ms. Houser was placed in a diversionary program known in Pennsylvania as "accelerated rehabilitative disposition" (ARD). She was never formally convicted. Ms. Houser has not been arrested since the 1981 case, almost 30 years ago.

34. Because of her clean criminal record over the last 30 years, her prior satisfactory employment by the Census Bureau (which was *after* her criminal case), her extensive work history, and her civic activities in her neighborhood, Ms. Houser is a strong job applicant to be a Census employee. Ms. Houser remains ready, willing and able to work for Census if she were to be hired.

35. At all times relevant to this complaint, Plaintiffs have been applicants for employment to an executive agency of the United States government within the meaning of Title VII, 42 U.S.C. § 2000e-16(a).

36. Defendant Gary Locke is the Secretary of the United States Department of Commerce, and has full authority over the United States Census Bureau. 42 U.S.C. § 2000e-16(c).

## STATEMENT OF THE CLAIM

### A. The Census Hiring Process has a Discriminatory Racial and Ethnic Impact

37. Census' screening practice effectively imports the severe racial and ethnic disparities in the criminal justice system into the employment process, thereby multiplying the negative impact on African American, Latino, and Native American job applicants with arrest

and minor conviction histories. Indeed, the Department of Justice recognizes that a practice of using the FBI criminal records database in a widespread manner for criminal screening, without further refinement, undermines employment anti-discrimination policies.

38.     Racial disparities in the U.S. criminal justice system are severe.  African Americans, Latinos, and Native Americans are far more likely to have arrest records and convictions than whites.  While African Americans make up approximately 12.3% of the population, they account for approximately 28.3% of arrests and an even greater percentage of felony convictions nationwide. Similarly, Latinos are arrested and incarcerated at rates significantly higher than their proportion of the population.  Native Americans make up approximately 0.8% of the U.S. population, but they account for approximately 1.3% of arrests nationwide.[1]

39.     Most arrests are for minor crimes and non-criminal offenses.  For example, these charges often include activity such as curfew and loitering violations, vagrancy, and disorderly conduct.  African Americans are far more likely (by as much as 15 times) than whites to be arrested for low-level offenses.  Yet very few (less than 20%) of the arrests of African Americans for these offenses result in convictions.

**B. The 30-Day Letter Creates a Barrier to Employment that is Neither Job-Related nor Consistent with Business Necessity**

40.     The 30-day letter screens out applicants who are otherwise eligible according to Census' hiring standards, i.e. those with arrests but no convictions (or pending charges), and those with convictions that are old or do not relate to violence or dishonesty.  First and foremost, Census does not identify the criminal history information from the FBI report that causes Defendant's concern. By requiring applicants to provide official court documentation of all

---

[1] The statistics cited in this Complaint are derived from publicly available sources and are subject to that limitation.

arrests, Census has created a hurdle that is often insurmountable, and in many cases is literally impossible to overcome. Many of the official documents that Census requires simply do not exist. Even where compliance is not a literal impossibility, the difficulty, time, and expense of attempting to comply within 30 days presents a significant impediment to many applicants. These requirements presuppose that the individual can accurately remember the details of past occurrences and what may have been alleged. If the individual is not able to comply within 30 days, their application, like Ms. Houser's, is automatically denied with no opportunity to re-apply.

41.     Ironically, the directive in the 30-day letter to produce documentation of "any and all arrest(s) and/or conviction(s)" deters or excludes many of the best-qualified applicants with arrest records of non-criminal or insignificant charges that are decades old. Generally speaking, the more irrelevant one's record, the harder it is to find, and the more likely one is to fail to obtain and submit it, especially when limited to less than a month to do so. Census thus unnecessarily excludes qualified potential workers, and undermines its own publicized goal of "indigenous hiring," i.e. hiring people to work in the communities in which they live. This not only violates Title VII, but it increases the risk that Census will end up with a substantial undercount in communities of color. There is already a low mail-in response rate in many such communities, making the need to hire putative class members all the more critical.

### 1. Compliance with the 30-Day Letter is Impossible for Many Applicants

42.     Many people with criminal histories have had their records expunged or sealed, and have been returned to the legal position of having never been arrested or convicted. As of the latest report in 2006, sixteen states and the District of Columbia have statutes providing for expungement of felony convictions; twenty states have statutes that provide for setting aside felony convictions; and fifteen states have statutes that provide for the sealing of conviction

records. However, often these expungements and sealings are not reported to the FBI from the states in which they originated, so the records of convictions are never removed from the FBI database. Yet, many of these records are not accessible to members of the general public, and some expunged or sealed records are actually destroyed (e.g. Pennsylvania) or made unavailable for release (e.g. New Jersey and Arkansas). In a number of states and localities, regardless of expungement or sealing, criminal records have been destroyed pursuant to official record retention policies or by inadvertence. Thus, many Census applicants are caught in a Catch-22: you cannot be hired unless you provide an official document that no longer exists, but failure to respond with official documentation leads to automatic rejection.

### 2. Compliance with the 30-Day Letter is Unduly Burdensome

43.     Even where records have not been destroyed, a vast number of applicants are faced with insurmountable hurdles in determining where their records are kept and how to obtain them. The process by which official court records can be obtained is unknown to many applicants, especially those with only fleeting interaction with the criminal justice system. The 30-day letter fails to provide even the simplest advice on which records to obtain and how to obtain them—not even a list of phone numbers or web sites. Obtaining such records often requires sophistication about the background record-keeping system, which varies widely from state-to-state and locality-to-locality.

44.     Additionally, because Census directs them to provide "all" official records, many applicants face the nearly impossible burden of finding records that are decades old, possibly located in a different state, in a little over three weeks. Even where conceivably possible, the cost and delay involved in such a search are cumulative and prohibitive. This has a particular impact on retirees living on limited incomes, whom Census actively encourages to apply. To make matters worse, the directive to supply "all" official records of "any arrest" literally includes

14

juvenile infractions.

### 3. The 30-Day Letter is Ambiguous and Creates Confusion

45.     Many applicants are rightly confused as to what constitutes an arrest. There is no

universal definition of when a person is arrested. For example, the Department of Justice

distinguishes between an "arrest" and "detention," without clearly defining either. (28 C.F.R. §

20.3(d)). If people are not sure whether an encounter with the police has been reported as an

arrest, they will not know which incidents to investigate. In many African American and Latino

neighborhoods, where stop-and-frisk and other encounters with police frequently occur, it is hard

to know which interactions resulted in a record and which did not.

46.     There is also significant ambiguity in the term "official court documentation" used

in the 30-day letter. There is a wide spectrum of possibilities, from mere disposition statements

to full court transcripts. In some states, such as Pennsylvania, individuals can obtain computer-

generated summary dispositions that identify the criminal history, but are not original documents.

As another example, in New York, the Office of Court Administration provides criminal

background reports, but they are not certified; an official court document with the court seal

affixed must be obtained from the court of origination, which provides a Certificate of

Disposition.

47.     Additionally, each state maintains its own repository of criminal records. For

many people seeking their criminal records, this is the most obvious source of retrieval,

especially since many repositories have automated features and can be contacted on-line.

However, many criminal records that appear in the FBI database are not accessible to applicants

through their state repositories. Indeed, well over 10% of criminal records nationwide are in what

the Department of Justice classifies as "Closed Record States," where criminal records are

unavailable to Census applicants due to strict limitations on production. In some states where

records are not completely closed, disposition information will not be disclosed even upon request by the subject of the record.

48.     Additionally, the delay created by the 30-day letter—and the series of events that it triggers, including follow-up letters with further directives—is itself a significant barrier to employment.  Even for those who are eventually hired, the delay imposed by this process harms Class members, especially those struggling with financial hardship in the current economic climate of high unemployment.

### C. There is a Less Discriminatory Alternative that Would Better Achieve Census' Legitimate Hiring Interests, Which Can be Implemented Easily and Quickly

49.     As discussed above, the 30-day letter creates a significant barrier to employment that deters or excludes many qualified applicants.  The simple resolution to this problem is for Census to cease using the 30-day letter and grant eligibility to all qualified applicants with arrests only or with convictions that are not excludable under Cenus policy.
In detail, the less discriminatory alternative would include the following steps:

(1)     All applicants with a record of an arrest over one year old at the time of application and no disposition, including those with juvenile adjudications or convictions that have been expunged or sealed, should be given the same consideration as applicants whose names do not appear in the FBI database, unless Census provides the applicant with documented evidence that the individual has been convicted of a crime of violence or dishonesty that is a proper basis for excluding them from consideration under Census policy;

(2)     All applicants with an FBI record of conviction for a crime that does not include violence or dishonesty, which according to Census policy should not be considered in determining hiring eligibility,  shall be given the same consideration as applicants whose names do not appear in the FBI database;

(3)     Consistent with (1) and (2) above, all applicants with convictions (or pending charges) for crimes of violence or dishonesty that subject the individual to exclusion from hiring based on Census policy promptly should be given a written description of the conviction(s) (or pending charge) that form the basis for presumptive exclusion; and

(4)     Census should ask each presumptively excludable applicant in (3) if they contest the identified conviction(s), and, for pending charges, whether a disposition has occurred. Each such individual should be given a meaningful opportunity to meet Census' explicit exception for anyone who "demonstrates that he or she does not present a current threat," through evidence of rehabilitation, an explanation of events leading to the conviction, or other mitigating factors. Census should then promptly evaluate such evidence.

## CLASS ACTION ALLEGATIONS

50.     Plaintiffs are members of the Class, which includes applicants for whom there is no record of conviction (excluding those with charges pending at the time of application), or who are otherwise suitable for employment based on the Census Bureau's criminal background exclusion factors, and who either (1) were deterred from complying with the 30-day letter and did not respond to it, or (2) responded to the 30-day letter (regardless of whether the response was ultimately deemed adequate or timely), and who were denied employment or have not been given a final response to their application.

51.     The members of the Class are so numerous that joinder of all of them is impracticable. Census recruits for decennial positions throughout the United States and screens all of the approximately 4 million applicants using the FBI database to hire around 1.4 million temporary employees.

52.     There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Common questions include,

17

but are not limited to: (1) Whether it is Defendant's policy or practice to deter or exclude

temporary job applicants with criminal histories who have never been convicted or who are

otherwise eligible for employment based on Census' criminal background exclusion factors; (2)

Whether Defendant's policy or practice to deter or exclude job applicants based on criminal

history has a disparate impact on African American, Latino, and Native American applicants; (3)

Whether Defendant's policy or practice to deter or exclude job applicants based on their criminal

history records is job related and consistent with business necessity; (4) Whether less

discriminatory policies exist that would meet Defendant's legitimate needs; and (5) What

equitable and injunctive relief for the Class is warranted.  It is notable for commonality that

Defendant acknowledges that Census has a *single, uniform* background check procedure that is

used for *all* decennial applicants.

53.     Plaintiffs' claims are typical of the claims of the Class:  (1) Each of the Plaintiffs

applied for a temporary position in the 2010 census; (2) Each was processed through the same

application procedure; (3) Each was subjected to substantially the same screening device; (4)

Each was sent substantially the same form letter that constructively denied them the position or

deterred them from pursuing the job further; and (5) Each has the same discrimination claim

based on disparate impact.  All of these claims are shared by each and every class member.

54.     Plaintiffs will fairly and adequately represent and protect the interests of the

members of the Class.  Plaintiffs have no conflict with one another or any class member.

Plaintiffs are committed to the goal of having Census revise its hiring policy and practice to

reduce or eliminate its discriminatory impact on African American, Latino, and Native American

applicants.

55.     Plaintiffs have retained counsel competent and experienced in complex class

actions, employment discrimination litigation, and the intersection thereof.

56.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. The Class members are entitled to injunctive relief to end Defendant's common, uniform, unfair, and discriminatory policies and/or practices.

**CLAIM FOR RELIEF**
**(Title VII of the Civil Rights Act of 1964,**
**42 U.S.C §§ 2000e *et seq.*)**

57.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

58.     Plaintiffs bring this claim on their own behalf and on behalf of the Class.

59.     Defendant's policy and practice of using a pre-employment screen that deters or excludes applicants with arrest or irrelevant conviction records from obtaining employment opportunities, has harmed, and continues to harm, Plaintiffs and the Class, and constitutes unlawful discrimination on the basis of race, ethnicity, color, and/or national origin in violation of 42 U.S.C. §§ 2000e *et seq.*

60.     Defendant's policy and practice of using a pre-employment screen that deters or excludes applicants with arrest or irrelevant conviction records from obtaining employment opportunities has a disparate impact on African Americans, Latinos, and Native Americans, and is neither job related nor consistent with business necessity. Even if Defendant's policy and practice of denying employment opportunities based on applicants' criminal history records could be justified by business necessity, less discriminatory alternatives exist that would equally serve any legitimate purpose.

61.     Plaintiffs and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiffs and the Class they seek to represent are now

suffering, and will continue to suffer, irreparable injury from Defendants' discriminatory acts and omissions.

62.      Defendant's conduct has caused, and continues to cause, Plaintiffs and the members of the Class substantial losses in earnings and other employment benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class pray for relief as follows:

63.      Certification of the case as a class action on behalf of the proposed Class;

64.      Designation of Representative Plaintiffs Eugene Johnson and Evelyn Houser as representatives on behalf of the Class;

65.      Designation of Representative Plaintiffs' counsel of record as Class counsel;

66.      A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

67.      A preliminary and permanent injunction against Defendant and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein, consistent with the less discriminatory alternative described above;

68.      An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all Class members who would be eligible under application of the Uniform Guidelines for Employee Selection Procedures and related EEOC Guidance, and that Defendant eradicate the effects of past and present unlawful employment practices;

69.      An order restoring Plaintiffs and Class members to their rightful positions at Census as applicants, and requiring that they be given priority consideration for hire in job vacancies in the positions for which they are qualified, or in lieu of instatement, an order for front

pay and benefits;

70.     Back pay accruing as a result of a delay in hiring Plaintiffs and Class members

caused by the illegal policies and practices alleged herein;

71.     Costs incurred herein, including reasonable attorneys' fees to the extent allowable

by law, including but not limited to 42 U.S.C. §§ 2000e-5(k) & 2000e-16;

72.     Pre-judgment and post-judgment interest, as provided by law; and

73.     Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.


Dated:   New York, NY
         April 13, 2010

                                        Respectfully submitted,


                                        By:_____

                                        **OUTTEN & GOLDEN LLP**
                                        Adam T. Klein (AK 3293)
                                        Justin M. Swartz (JS 7989)
                                        Samuel R. Miller (SM 2511)
                                        Lewis M. Steel (LS 4463)
                                        Ossai Miazad (OM 1127)
                                        Rachel M. Bien (RB 6919)
                                        Melissa Pierre-Louis (MP 4946)
                                        3 Park Avenue, 29th Floor
                                        New York, NY 10016
                                        Telephone:  212-245-1000

                                        **and**

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS**          **CENTER FOR CONSTITUTIONAL RIGHTS**
**UNDER LAW**                                     Anjana Samant (AS 5163)
Audrey Wiggins*                                   Darius Charney (DC 1619)
Sarah Crawford*                                   666 Broadway 7th Floor
1401 New York Ave., NW                            New York, NY 10012
Washington, DC  20005

**COMMUNITY SERVICE SOCIETY**
Judy Whiting (JW 8665)
Paul Keefe (PK 1618)
105 East 22nd Street
New York, NY 10010

**COMMUNITY LEGAL SERVICES, INC.**
Sharon Dietrich*
1424 Chestnut Street
Philadelphia, PA 19102

**LatinoJustice PRLDEF**
Richard Bellman (RB 0049)
Jackson Chin (JC 3494)
99 Hudson Street, 14th Floor
New York, NY 10013

**INDIAN LEGAL RESOURCE CENTER**
Robert T. Coulter*
602 North Ewing Street
Helena, MT 59601

**PUBLIC CITIZEN LITIGATION GROUP**
Mike Kirkpatrick*
1600 20th St. NW
Washington, DC 20009

* *pro hac vice application forthcoming*

**Attorneys for Plaintiffs and the Putative Class**