**OUTTEN & GOLDEN LLP**
Adam T. Klein
Justin M. Swartz
Samuel R. Miller
Lewis M. Steel
Ossai Miazad
Rachel M. Bien
Melissa Pierre-Louis
3 Park Avenue, 29th Floor
New York, NY 10016

**COMMUNITY SERVICE SOCIETY**
Judy Whiting
Paul Keefe
105 East 22nd Street
New York, NY  10010

**COMMUNITY LEGAL SERVICES, INC.**
Sharon Dietrich*
1424 Chestnut Street
Philadelphia, PA  19102

**LatinoJustice PRLDEF**
Richard Bellman
Jackson Chin
99 Hudson Street, 14th Floor
New York, NY 10013

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
Audrey Wiggins*
Sarah Crawford*
1401 New York Ave., NW
Washington, DC  20005

**CENTER FOR CONSTITUTIONAL RIGHTS**
Anjana Samant
Darius Charney
666 Broadway 7th Floor
New York, NY 10012

**INDIAN LAW RESOURCE CENTER**
Robert T. Coulter*
602 North Ewing Street
Helena, MT 59601

**PUBLIC CITIZEN LITIGATION GROUP**
Michael T. Kirkpatrick*
1600 20th St. NW
Washington, DC  20009

*\* Admitted pro hac vice*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EUGENE JOHNSON, EVELYN
HOUSER, SANDRA ANDERSON,
ANTHONY GONZALEZ, IGNACIO
RIESCO, PRECIOUS DANIELS, and
FELICIA RICKETT-SAMUELS
on behalf of themselves and all others
similarly situated,

               Plaintiffs,

     v.

GARY LOCKE, Secretary, United States
Department of Commerce,

            Defendant.

**10 Civ. 3105 (FM)**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

   A.  Overview ............................................................................................. 2

   B.  Administrative Exhaustion.................................................................... 3

      1.  The Issuance of Right to Sue Notices ................................................ 3

      2.  Class-Wide Notice.................................................................... 4

         a.  The Letter from the Acting Chair of the EEOC ............................... 4

         b.  The Multitude of Other Class-Wide Administrative Charges .......................... 5

   C.  The Federal Complaint ....................................................................... 6

LEGAL STANDARD............................................................................................ 7

ARGUMENT ..................................................................................................... 8

   I.  PLAINTIFFS' CLAIMS ARE TIMELY AND MEET ALL JURISDICTIONAL
      REQUIREMENTS................................................................................... 8

   II.  PLAINTIFFS HAVE TIMELY EXHAUSTED AN ADMINISTRATIVE
      CHARGE AND DEFENDANT HAS WAIVED ANY RIGHT TO
      CHALLENGE IT.................................................................................... 9

      A.  Defendant has Waived the Right to Re-Argue the Timeliness of Plaintiffs'
         Administrative Charge .................................................................... 9

      B.  Plaintiffs are Entitled to Equitable Tolling of their Charge ......................... 11

   III.  DEFENDANT HAS BEEN ON CLASS-WIDE NOTICE SINCE  THE
      INCEPTION OF HIRING FOR THE 2010 CENSUS ........................................ 15

      A.  Defendant Received Actual Notice by the EEOC and through the Filing of
         Numerous Charges......................................................................... 16

      B.  The Federal Government is not Exempt from Equitable Exceptions to the
         Administrative Filing Regulations .................................................... 20

      C.  Class Certification Issues are Irrelevant to Exhaustion ............................... 22

IV.   THE NAMED PLAINTIFFS WITHOUT EXHAUSTED CHARGES CAN
        PIGGYBACK ONTO MS. HOUSER'S CHARGE ............................................. 25

CONCLUSION............................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison v. Potter*,
   2002 WL 1212248 (EEOC 2002) ........................................................................................21

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ..................................................................8

*Barnhart v. Safeway Stores, Inc.*,
   No. S-92-0803, 1992 U.S. Dist. LEXIS 22572 (E.D. Cal. Dec. 14, 1992)............................23

*Belhome v. Widnall*,
   127 F.3d 1214 (10th Cir. 1997) ....................................................................................18, 22

*Berry v. Florida Int'l Univ. Bd of Trustees*,
   2008 WL 410129 (S.D.Fla. 2008) .......................................................................................14

*Bodner v. Banque Paribas*,
   202 F.R.D. 370 (E.D.N.Y. 2000) .........................................................................................23

*Boos v. Runyon*,
   201 F.3d 178 (2d Cir. 2000).........................................................................................12, 14

*Briggs v. Henderson*,
   11 F.Supp.2d 727 (D.Conn. 1998) ......................................................................................10

*Briones v. Runyon*,
   101 F.3d 287 (2d Cir. 1996).....................................................................................10, 11, 20

*Brown v. General Servs. Admin*,
   425 U.S. 820 (1976).............................................................................................................15

*Brown v. Principi*,
   No. 04 Civ. 1221, 2007 WL 959375 (S.D.N.Y. 2007) .........................................................13

*Butts v. City of New York Department of Housing Preservation and Development*,
   990 F.2d 1397 (2d Cir. 1993)...............................................................................................18

*Cano v. United States Postal Service*,
   755 F.2d 221 (1st Cir. 1985)................................................................................................12

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir.2002)....................................................................................................7

*Church v. Consolidated Freightways, Inc.*,
    137 F.R.D. 294 (N.D. Cal. 1991) ........................................................................18

*Contreras v. Ridge*,
    305 F. Supp. 2d 126 (D.D.C. 2004) .......................................................... passim

*Cronas v. Willis Group Holdings Ltd.*,
    101 F.E.P. 1490, 2007 WL 2739769 (S.D.N.Y. 2007) .....................................8, 25

*Debose v. Fedex Corp.*,
    2009 WL 1542572 (S.D.N.Y. 2009) ...............................................................23, 25

*Dillard v. Runyon*,
    928 F. Supp. 1316 (S.D.N.Y. 1996) ..................................................................15

*Downes v. Adams*,
    1982 WL 31035 (E.D.N.Y. 1982) .....................................................................21

*Downes v. Adams*, 33 FEP 929
    (E.D.N.Y. 1982) ..........................................................................................18, 22

*EEOC v. Shell Oil Co.*,
    466 U.S. 54 (1984) ..........................................................................................16

*Fantini v. Salem State College*,
    557 F.3d 22 (1st Cir. 2009) ..............................................................................18

*Fausto v. Reno*,
    955 F.Supp. 286 (S.D.N.Y. 1997) ....................................................................15

*Fed. Exp. Corp. v. Holowecki*,
    552 U.S. 389 (2008) ...................................................................................16, 17

*Fellows v. Universal Restaurants, Inc.*,
    701 F.2d 447 (5th Cir. 1983) ...........................................................................20

*Fitzwater v. Veterans Admin.*,
    90 F.R.D. 435 (S.D. Ohio 1981) .................................................................20, 21

*Gen. Tel. Co. of the NW, Inc. v. EEOC*,
    446 U.S. 318 (1980) ........................................................................................16

*German v. Pena*,
    88 F. Supp. 2d 216 (S.D.N.Y. 2000) ................................................................13

*Gilbert v. Tisch*,
    1987 WL 14908 (S.D.N.Y. 1987) .....................................................................13

*Girard v. Rubin,*
    62 F.3d 1244 (9th Cir. 1995) ...................................................................................11, 20

*Heins v. Potter,*
    271 F.Supp.2d 545 (S.D.N.Y. 2003).......................................................................12

*Hicks v. ABT Assocs., Inc.,*
    572 F.2d 960 (3d Cir. 1978)...............................................................................16, 17

*Holdmeyer v. Veneman,*
    321 F.Supp.2d 374 (D.Conn. 2004).......................................................................15

*Holley v. Department of Veteran Affairs,*165
    F.3d 244 (3rd Cir. 1999) .....................................................................................10

*Holowecki* v. *Federal Exp. Corp.*
    644 F.Supp.2d 338 (S.D.N.Y. 2009).............................................................19, 23, 24

*Holtz v. Rockefeller & Co.,*
    258 F.3d 62 (2d Cir. 2001)..........................................................................16, 23, 26

*Hunt v. Ashcroft,*
    2005 WL 927352 (N.D. Fla. 2005).........................................................................12

*International Union v. Clark,*
    No. 02-1484, 2006 WL 2687005 (D.D.C. Sept. 12, 2006).....................................22

*Johnson v. Runyon,*
    47 F.3d 911 (7th Cir. 1995) ...............................................................................12, 13

*Judge v. Henderson,*
    172 F. Supp. 2d 410 (S.D.N.Y. 2001).....................................................................14

*Love v. Pullman Co.,*
    404 U.S. 522 (1972)...................................................................................................8

*Lusardi v. Lechner,*
    855 F.2d 1062 (3d Cir. 1988)............................................................................16, 17

*Marinelli v. Chao,*
    222 F. Supp. 2d 402 (S.D.N.Y. 2002).....................................................................13

*McClain* v. *Lufkin Industries, Inc.*
    519 F.3d 264 (5th Cir. 2008) ...........................................................................23, 25

*McKenzie v. Principi,*
    2001 WL 1005931 (E.D. La. 2001) .......................................................................22

*McKnight v. Gates,*
  282 Fed. Appx. 394, 2008 WL 2491626 (6th Cir. 2008).........................................22

*Metsopulos v. Runyon,*
  918 F.Supp. 851 (D.N.J.1996) ..............................................................................10

*Miles v. Merrill Lynch & Co.,*
  471 F.3d 24, 41 (2d Cir. 2006)...............................................................................22

*Miller v. International Tel. & Tel. Corp.,*
  755 F.2d 20 (2d Cir. 1985)......................................................................................15

*Moore v. Shinseki,*
  2010 WL 1257914 (W.D.N.Y. 2010) .....................................................................10

*Moultrie v. Potter,*
  No. 04 Civ. 6887, 2006 WL 1495234 (S.D.N.Y. May 31, 2006)...........................15

*Murphy v. West,*
  No. 982308, 1999 WL 64284 (4th Cir. Feb. 11, 1999)...........................................22

*Newman & Schwartz v. Asplundh Tree Expert Co.,*
  102 F.3d 660 (2d Cir.1996)......................................................................................7

*Paladino v. Potter*
  2007 WL 4255247 (E.D.N.Y. 2007).......................................................................12

*Parker v. Time Warner Entm't Co.,*
  331 F.3d 13 (2nd Cir. 2003)....................................................................................23

*Pauling v. Secretary of Dept of Interior,*
  160 F.3d 133 (2d Cir. 1998)....................................................................................14

*Pavano v. Shalala,*
  95 F.3d 147 ..............................................................................................................22

*Rahman v. Smith & Wollensky Rest. Group, Inc.,*
  2008 U.S. Dist. LEXIS 2932 (S.D.N.Y. Jan. 16, 2008) ........................................18

*Riley v. Potter,*
  2010 WL 125841 .....................................................................................................22

*Robbins v. Bentsen,*
  41 F.3d 1195 (7th Cir.1994) ...................................................................................10

*Rosario v. Potter,*
  No. 07 Civ. 5891, 2009 WL 3049585 (S.D.N.Y. Sept. 23, 2009)..........................14

*Smith v. Kaldor,*
   869 F.2d 999 (6th Cir. 1989) ......................................................................10

*Snell v. Suffolk County,*
   782 F.2d 1094 (2d Cir.1986).....................................................................8, 25

*Spector v. Board of Trustees of Community-Technical Colleges,*
   2007 WL 4800726 (D.Conn. 2007) .............................................................24

*Tolliver v. Xerox Corp.,*
   918 F.2d 1052 (2d Cir. 1990)......................................................................25

*Torres v. U.S. Dep't of Veteran Affairs,*
   No. 02 Civ. 9601, 2004 WL 691237 (S.D.N.Y. Mar. 31, 2004) .................15

*Ulvin* v. *Northwestern Nat. Life Ins. Co.*
   943 F.2d 862 (8th Cir. 1991) ...................................................................23, 25

*Velez v. Novartis Pharms. Corp.,*
   244 F.R.D. 243, 2007 WL 2197800 (S.D.N.Y. 2007) ...............................26

*Vuyanich* v. *Republic Nat. Bank of Dallas,*
   723 F.2d 1195 (C.A.Tex. 1984).................................................................23

*Zipes v. Trans World Airlines, Inc.,*
   455 U.S. 385, 397 (1982)..................................................................... passim

## Rules

29 C.F.R. § 1614.105 ............................................................................ passim

29 C.F.R. § 1614.204 ...........................................................................13, 27

Fed. R. Civ. Proc. 12(b)(6) ...........................................................................15

## Statutes

Second Chance Act of 2007.............................................................................9

Title VII of the Civil Rights Act of 1964............................................... passim

## Other Authorities

E.E.O.C. Mgmt. Dir. Sept. 30, 2003 ............................................................21

EEOC Decision, Case No. 570-2008-00018X, Sept. 30, 2010 ....................21

Remarks of President G.W. Bush at the Signing of H.R. 1592 ....................17

**INTRODUCTION**

This lawsuit challenges the use of incomplete and inaccurate FBI arrest and conviction records to screen out temporary job applicants – to the known detriment of well over 100,000 qualified African Americans, Latinos, and Native Americans – in obvious violation of Title VII of the Civil Rights Act of 1964.  Instead of defending this case on the merits, the Government has refused to process these allegations at the agency level, while simultaneously moving to dismiss this lawsuit.   Defendant attempts to escape this Court's jurisdiction by claiming it has not been placed properly on notice of its wide-spread violations only by ignoring convincing evidence to the contrary.  As this Opposition demonstrates, there is no merit to Defendant's position.

First, Plaintiff Evelyn Houser's charge was timely because the Director of the EEOC's Office of Federal Operations ruled that she did not have constructive notice of the 45-day deadline. Defendant failed to challenge this decision, precluding federal review of the matter under Second Circuit precedent. Defendant's argument that Ms. Houser failed to contact a Commerce EEO counselor within 45 days is therefore meritless.

Second, Defendant has been on *actual* notice of the class-wide discriminatory impact of its criminal background practices from the Acting Chair of the Equal Employment Opportunity Commission and from numerous job applicants since the inception of temporary hiring for the 2010 census. As the Supreme Court has held, where an employer is on actual notice that its policy or practice is allegedly discriminatory, and there has been an opportunity for remediation, the goal of administrative exhaustion has been met, regardless of whether all the technical requirements of the administrative procedure have been fully satisfied.  Defendant's request for dismissal relies entirely on its willful ignorance of this legal precedent and the indisputable facts establishing class-wide notice.

1

Third, it is premature for the Court to address issues concerning class certification. Defendant should not be allowed to move to deny class certification before Plaintiffs even have an opportunity to take discovery and file a properly substantiated motion.   Defendant's attempt to limit the scope of Plaintiffs' class claims and to disqualify some of the class representatives also must fail, as all class members have suffered from a unitary policy and practice of sending the 30-day letter to virtually every applicant who has ever been arrested, and applying the same arbitrary "adjudication" screen to the few who are able to comply with the letter.

In sum, Defendant's motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Overview

Over the past two years, the United States Census Bureau ("Census") has hired over one million temporary workers to conduct the 2010 census.  Approximately 3.8 million people have applied for temporary work with Census to help complete the 2010 decennial count.  Amended Complaint ("AC") ¶¶ 1-3.

As a precondition of employment, Census has required nearly all job applicants who have ever been arrested to produce within 30 days the "official court documentation" for all of their arrests—notwithstanding the final disposition, the nature of the arrest, its relationship to the job, or when it took place.  This requirement eliminated 93% of these applicants – well over 700,000 people – from being considered for employment during the 2010 census.  AC ¶¶ 1-7.

Of the relatively few applicants who were able to find and deliver this documentation on time, Census applied a second screen.  Applicants who had never been convicted, those who had their records officially expunged, and those with minor and old offenses were excluded from employment.  The process of satisfying the requirements of the 30-day letter and then being

2

subjected to the adjudication screen took months to complete, and many applicants simply never heard any response from Census whatsoever. For many otherwise qualified applicants, the attendant time delay was tantamount to a denial of employment. AC ¶ 11.

### B.   Administrative Exhaustion

#### 1.   The Issuance of Right to Sue Notices

Plaintiff Evelyn Houser, who is 69 years old, worked for Census in 1990 as an enumerator and a clerk. After applying for a temporary position for the 2010 census, Ms. Houser received the 30-day letter in March 2009. Since Ms. Houser's arrest record was not included, she did not know how to respond, so she obtained a set of her fingerprints and mailed them to Census within the 30-day period. AC ¶ 55.

By letter dated May 21, 2009, Census informed Ms. Houser that she had not provided the correct information. On that basis, Census rejected her application for employment. On August 10, 2009, Ms. Houser filed an Informal EEO Complaint with Census explicitly challenging "the disparate impact of [the Census Bureau's] policies about criminal records on African-Americans." AC ¶ 36.

On August 28, 2009, Ms. Houser filed a written Charge of Discrimination with the Equal Employment Opportunity Office of the Department of Commerce, reiterating her class-wide allegation of disparate impact based on race. On September 29, 2009, the EEO Office dismissed Houser's complaint because she failed to initiate contact with an EEO counselor within 45 days of her rejection for employment. Plaintiff Houser appealed that decision to the EEOC. AC ¶ 36.

On January 28, 2010, the EEOC's Office of Federal Operations ("OFO") overturned the prior decision and ruled that the filing period should be tolled based on equitable considerations because Ms. Houser and all other applicants for temporary Census positions did not have

constructive notice of the 45-day deadline during their brief time at the Census testing sites.  See

29 C.F.R. § 1614.105(a)(2); Exh. A to K. Anderson Decl., filed with Def's Mot. Dismiss

(USA0273).  The EEOC's decision also provided that Plaintiff had the right to file a civil action

in federal District Court within 90 calendar days from the receipt of the decision and notified

Defendant that it had 30 days to seek reconsideration, after which the Decision would become

final.  Defendant did not challenge the Commission's determination regarding Ms. Houser's

charge.  AC ¶ 36; Exh. A to K. Anderson Decl.

### 2.  Class-Wide Notice

#### a.  The Letter from the Acting Chair of the EEOC

On July 10, 2009, one month prior to Ms. Houser filing her administrative complaint, the

Acting Chair of the EEOC wrote a detailed four-page letter to the Secretary of the Department of

Commerce and the Acting Director of the U.S. Census Bureau.  AC ¶¶ 38-42; Declaration of

Samuel R. Miller ("Miller Decl.") ¶ 21, Exh. 28.[1]  The letter stated that the EEOC was aware of

reports of "numerous instances nationwide" in which Census told applicants that their record of

an arrest or conviction would disqualify them unless shown to be incorrect, that the Census

application states that adult convictions other than a minor traffic violation could be the basis for

nonselection, and that "this information suggests that the Census Bureau's approach is overbroad

and may run afoul of Title VII."  The letter further informed the Secretary and Acting Director:

"Unless there is a record that an arrest resulted in a conviction, an arrest in itself is not evidence

that the person engaged in the conduct alleged.  Therefore, without confirmation, the Census

Bureau should not disqualify people based on an arrest record."  AC ¶¶ 38-42.

The Acting Chair further noted that the EEOC had become aware of Census' use of the

30-day letter, and stated:  "this practice is inconsistent with Census Bureau's obligation under

---

[1] All references in this brief to "Exh. __" are attached to the Miller Declaration.

Title VII, to objectively assess whether the applicant or employee in fact engaged in the conduct alleged." Additionally, the EEOC stated that "the Census Bureau should not exclude people from employment for offenses that do not predict an unacceptable risk." AC ¶¶ 38-42.

### b. The Multitude of Other Class-Wide Administrative Charges

Defendant has been on notice of the class-wide adverse impact of Census' criminal background screening policy since the outset of the 2010 decennial hiring process through multiple EEO informal charges and formal complaints challenging Census' criminal screening policy as having an adverse impact based on race and ethnicity.

As early as October 2008, an African American applicant filed a formal charge of race discrimination, challenging Census' rejection of his application for temporary employment. His complaint states that his challenge was based on the "disparate and adverse impact" of Census' criminal background policy on him as a minority worker, noting his understanding that the policy has a "discriminatory impact on the protected class." AC ¶ 43; Exh. 1.

In August 2009, another African American applicant filed a formal complaint of class-wide discrimination, alleging that the "Census Bureau's policy or practice of using criminal conviction information to screen out candidates for hire is discriminatory in that it has a disparate impact on African Americans…" The complaint sought "class and individual injunctive, declaratory and monetary relief (back and front pay) and all other relief provided for under Title VII." AC ¶ 49; Exh. 2.

Between July 2009 and April 2010, at least five other putative class members filed formal charges of race discrimination based on Census' criminal background process. AC ¶ 45; Exhs. 3-9. Some of the class-wide charges have followed the precise procedures set forth in 29 C.F.R. § 1614.204 ("Class Complaints"). Exhs. 9, 11, 13, 14. The Department of Commerce and the

EEOC have placed all active formal complaints into "abeyance," on the basis that all such complaints are subsumed by this federal action. *See, e.g.*, Exh. 6. Counsel for certain of the charging parties have challenged that decision, and the Department has refused to lift any of the abeyances. *Id.*

Additionally, an innumerable quantity of informal charges have been filed – so many that Census has refused to produce them because they, along with other discrimination complaints regarding hiring for the 2010 census, stack up over *148 feet* high. Miller Decl. ¶ 18, Exh. 24. And numerous informal charges recently have been filed, all of which, in the ordinary course of proceeding, should advance to the formal complaint stage within a matter of weeks. Miller Decl. ¶ 17; Exhs. 16-23.

To date, Defendant has not changed its criminal background hiring practices or policies.

**C.  The Federal Complaint**

Plaintiffs Eugene Johnson and Evelyn Houser filed this class action on April 13, 2010. Plaintiffs brought this case as a class action under Federal Rules of Civil Procedure 23(a) and (b)(2), on behalf of the following class:

> All African American, Latino, and Native American persons who applied for temporary employment with the United States Census Bureau for positions including but not limited to Census Takers (also known as Enumerators), Census Crew Leaders, Recruiting Assistants, and/or Clerks, who were sent a 30-day notice to produce official court documentation or fingerprints, for whom there was no record of conviction, or who were otherwise suitable for employment because they do not present a legitimate threat to the public safety or integrity of the counting process, and who were not hired or were terminated by the Census Bureau, between the commencement of temporary hiring for the 2010 decennial census and the date of judgment in this action ("the Class").

AC ¶ 33.

After conducting limited discovery, Plaintiffs filed an Amended Complaint on August 5, 2010, adding new factual allegations and five additional named plaintiffs. The following is a

brief description of the new plaintiffs:

- Felicia Rickett-Samuels is African American and was rejected by Census based on convictions over ten years old, despite presenting an excellent record of rehabilitation including educational and volunteer achievements and a Certificate of Good Conduct, which creates a presumption of rehabilitation under New York State Law.

- Precious Daniels is African American and was rejected by Census based on an arrest that was dismissed for a peaceful protest against rising health care costs in 2009.

- Sandra Anderson is Native American and was rejected by Census based on a plea to first-time driving under the influence in 2006, her only conviction.

- Anthony Gonzalez is Latino and submitted paperwork regarding his convictions from the 1980's, as well as documentation showing rehabilitation and a sixteen year history as an Alcohol and Substance Abuse Treatment Counselor for the New York State Department of Correctional Services, in response to the 30-day letter, but has never heard a response from Census regarding his application.

- Ignacio Riesco is Latino and submitted paperwork regarding his arrest in 2006, where the prosecutor dropped all charges, but has never heard a response from Census regarding his application.

AC ¶¶ 59-90.  Defendant's motion to dismiss followed the filing of the Amended Complaint.

## LEGAL STANDARD

In deciding whether a complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6), a court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). A court should consider only those facts alleged in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir.1996).[2]  To survive a motion to dismiss, "detailed

---

[2] Here, however, the Court has ordered limited pre-motion discovery of administrative complaints against Defendant by individuals other than the named Plaintiffs.  Miller Decl. ¶ 1.  In this Opposition, Plaintiffs submit relevant

factual allegations" are not required; the plaintiff must only present "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

**ARGUMENT**

## I.  PLAINTIFFS' CLAIMS ARE TIMELY AND MEET ALL JURISDICTIONAL REQUIREMENTS

At the crux of this motion lies a single legal proposition, enunciated by the Supreme Court nearly three decades ago in *Zipes v. Trans World Airlines, Inc.,* and continuing in full force today: Title VII's administrative prerequisites must be interpreted liberally to effectuate its purpose of eradicating employment discrimination, making filing provisions subject to waiver, tolling, and estoppel where equity requires.  455 U.S. 385, 397 (1982); *see also Love v. Pullman Co.,* 404 U.S. 522, 526-27 (1972) (fairness, and not excessive technicality, must guide the consideration of Title VII actions); *Snell v. Suffolk County,* 782 F.2d 1094, 1101 (2d Cir.1986) (courts must give substance to the underlying purpose of the filing procedures to convey "'prompt notice to the employer,' thereby encouraging conciliation wherever possible").  The Supreme Court has explained that "a technical reading [of the filing provisions] would be 'particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.'" *Zipes*, 455 U.S. at 397, quoting *Love*, 404 U.S. at 527.  As then-District Judge Lynch held recently in *Cronas v. Willis Group Holdings Ltd.*, No. 06 Civ. 15295, 2007 WL 2739769 (S.D.N.Y. 2007), "principles of 'leniency' and 'fairness' … guide the determination of whether a Title VII plaintiff has complied with the administrative prerequisites."  These principles bind all defendants in Title VII litigation, regardless of whether they are in the private sector or federal government.

---

evidence gained through that process, as well as evidence of other administrative charges known to Plaintiffs. Miller Decl. ¶¶ 3-17.

As discussed below, Plaintiffs have acted in timely fashion to place Defendant on notice of class-wide discrimination resulting from Census' criminal background check process.  In doing so, Plaintiffs have "honor[ed] the remedial purpose of [Title VII] as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer."  *Zipes*, 455 U.S. at 398.[3]

## II.   PLAINTIFFS HAVE TIMELY EXHAUSTED AN ADMINISTRATIVE CHARGE AND DEFENDANT HAS WAIVED ANY RIGHT TO CHALLENGE IT.

Disregarding the Supreme Court's holding in *Zipes*, Defendant argues that this Court should dismiss Ms. Houser's complaint simply because she failed to meet the technical requirement of contacting an EEO counselor within 45 days of her rejection for employment. Defendant fails to even mention equitable considerations.  Moreover, on administrative appeal from her denial, the EEOC ruled that the filing period should be tolled because she had not been placed on constructive notice.

### A.  Defendant has Waived the Right to Re-Argue the Timeliness of Plaintiffs' Administrative Charge

Defendant quite simply has waived its right to seek review of the timeliness issue in federal court.   The Second Circuit has ruled unequivocally on this precise question, leaving Defendant's argument wholly unfounded.

After the Department of Commerce issued a final decision denying Ms. Houser's administrative complaint for failing to contact an EEO counselor within 45 days, Ms. Houser appealed to the Office of Field Operations ("OFO") of the EEOC.  In its Decision, the Director

---

[3] Defendant's discriminatory practices are antithetical to the goals of the federal Second Chance Act of 2007, Pub. L. No. 110-199 (2008).  The federal policy underlying this Act was enunciated by former President Bush, and has been reiterated by President Obama, that "our government has a responsibility to help prisoners to return as contributing members of their community."  Remarks of President G.W. Bush at the Signing of H.R. 1592, *available at* http://georgewbush-whitehouse.archives.gov/news/releases/2008/04/20080409-2.html.
.

of the OFO held that Ms. Houser and all other applicants for temporary positions with Census qualified for equitable tolling, since they did not have constructive notice of the 45-day deadline during their brief time at the Census testing sites.  Exh. A to K. Anderson Decl. (USA0273).  The Decision explicitly notified Defendant that it had 30 days to seek reconsideration, after which the Decision would become final.  Defendant chose *not* to challenge the Commission's determination regarding Ms. Houser's charge, thereby allowing the Decision to become final.[4]

In *Briones v. Runyon,* 101 F.3d 287, 291 (2d Cir. 1996), the Second Circuit ruled that an EEOC decision on the timeliness of an administrative filing is final and cannot be reasserted in subsequent federal court litigation unless the party challenging the decision preserves its rights by seeking reconsideration:

> Following a pre-investigation agency determination that a discrimination claim is untimely, an *unappealed* final EEOC determination ruling the filing timely is *binding* on the parties and the court in a later-related Title VII action.

*Briones*, 101 F.3d at 292 (emphasis added); s*ee also Moore v. Shinseki*, No. 06-CV-655, 2010 WL 1257914, at * 10 (W.D.N.Y. 2010) (EEOC determination final if neither party seeks timely reconsideration).[5]

Faced with this precedent, Defendant attempts to distinguish *Briones* on its facts by noting that in *Briones* the defendant had an opportunity to process and investigate plaintiffs' claims before plaintiffs filed in district court.   Defendant reasons that if it had proceeded to an investigation after the EEOC's ruling, it could have "[chosen] whether to press the timeliness defense or waive the defense and make a final merits determination."  Def's Mot. Dismiss 18.

---

[4] It is ironic that Defendant seeks dismissal based on a lay person's delay of less than a month in seeking EEO counseling, while a federal agency represented by counsel failed to meets its deadline for reconsideration, and let additional time pass in which it could have sought permission to extend the deadline (29 C.F.R. § 614.105), but now seeks to be excused from its delay.

[5] *See also Robbins v. Bentsen,* 41 F.3d 1195, 1198 (7th Cir.1994) (same); *Smith v. Kaldor,* 869 F.2d 999, 1006 n. 6 (6th Cir. 1989) (same); *cf. Briggs v. Henderson,* 11 F.Supp.2d 727 (D.Conn. 1998) (request for reconsideration rendered the EEOC's action non-final); *Metsopulos v. Runyon,* 918 F.Supp. 851, 861 (D.N.J.1996) (same); *Holley v. Department of Veteran Affairs,* 165 F.3d 244, 246 (3rd Cir. 1999) (same).

This is a factual distinction without a difference and was not germane to the *Briones* decision. Defendant also is factually incorrect -- the EEOC ruling was binding after 30 days and obligated Defendant to investigate her charge.  Exh. A to K. Anderson Decl. (OFO Decision) ("The agency is ordered to process the remanded claims … Compliance with the Commission's corrective action is mandatory.").  Had Ms. Houser remained in the administrative process by not pursuing her legal rights in court, Defendant would *not* have had an opportunity to choose whether to waive the timeliness defense.[6]  In other words, the waiver of federal court review occurs automatically upon failure to seek reconsideration from the EEOC.[7]

### B.  Plaintiffs are Entitled to Equitable Tolling of their Charge

Even if the Court were to entertain Defendant's timeliness re-argument, there is no merit to the claim.  The EEOC regulations and courts interpreting these regulations in the context of the 45-day time limit apply equitable tolling, consistent with the Supreme Court's holding in *Zipes*. The specific regulation at issue here provides:

> The agency or the Commission *shall extend* the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or *she was not notified of the time limits and was not otherwise aware of them* … or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 614.105(a)(2) (emphasis added).

Again, the Second Circuit decision in *Briones* is dispositive.  In that case, the court held that the 45-day filing regulation for federal agencies "is analogous to a statute of limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling."  *Briones*, 101 F.3d at

---

[6] Of course, Census had ample opportunity to investigate and issue a final agency decision earlier in the process. Indeed, Defendant could have (and should have) recognized the serious problem of racial discrimination identified in Ms. Houser's complaint and conducted an investigation from the outset, rather than choosing to deny it prematurely on timeliness grounds.

[7] Defendant's reliance on *Contreras v. Ridge*, 305 F. Supp. 2d 126 (D.D.C. 2004) is unavailing, as the court only reviewed the EEOC's determination *after* defendant sought reconsideration and was denied.  *See also Girard v. Rubin,* 62 F.3d 1244, 1247 (9th Cir. 1995) ("The EEOC made a final decision… [t]hat was a final binding order on the [defendant], with which it had to comply unless it filed a motion to reopen within thirty days.").

11

290; *see also Heins v. Potter*,  271 F.Supp.2d 545, 551 (S.D.N.Y. 2003); *Boos,* 201 F.3d at 184;

*Paladino v. Potter,* No. 06-CV-5930, 2007 WL 4255247, at *4 (E.D.N.Y. 2007) *aff'd,* 347 F.

App'x. 613 (2d Cir. 2009).  Equitable tolling is particularly applicable in the present context,

where Plaintiffs and all putative class members were *applicants* for short-term temporary

positions, with no access to an actual worksite and no expectation of full employment.  Plaintiffs

could not realistically be expected to have seen and paid attention to Defendant's EEO notices,

even if they were posted.  As the Director of the EEOC Office of Federal Operations wrote with

respect to Ms. Houser, which is generalized to all applicants:  "complainant can not be expected

to have read such a posting, thereby having a constructive notice, while she was at the testing site

for only a brief time, i.e., about an hour."  Exh. A to K. Anderson Decl. (OFO Decision,

USA0278).

    The courts widely recognize that constructive notice hinges on this critical distinction

between applicants and employees.  Indeed, the courts have "serious doubts as to whether

posting a notice…in a location that an applicant visits on just one occasion could ever be

reasonably geared to give that applicant constructive notice of the time limits."  *Johnson v.

Runyon*, 47 F.3d 911, 919 (7th Cir. 1995).  Rather, as applicants, "the last thing on their mind is

what recourse, if any, they might have if the [future employer] discriminates in hiring." *Id*; *see

also Hunt v. Ashcroft*, No. 1:99-CV-00223, 2005 WL 927352 at *4 (N.D. Fla. 2005) ("[a]s an

applicant, rather than a current employee, Plaintiff would not have had reason to peruse the

personnel bulletin board"); *Cano v. United States Postal Service*, 755 F.2d 221, 222-23 (1st Cir.

1985) ("presence or absence of posted notice does not, standing alone, determine whether the

limitations period should be tolled"); *Gilbert v. Tisch*, No. 86 CIV 3933, 1987 WL 14908 at *3 (S.D.N.Y. 1987), quoting *Cano*, 755 F.2d at 222-23.[8]

The distinction between applicants and employees is highlighted by the cases cited by Defendant, where findings of constructive or actual notice of the charge filing deadlines is dependent on plaintiffs' status as *employees* who were in frequent contact with EEO postings. Thus, these cases support Plaintiffs' position that only employees with daily or regular exposure to equal employment notices over time can be deemed to have constructive notice of their charge filing obligations.  For example, in *Brown v. Principi*, No. 04 Civ. 1221, 2007 WL 959375 (S.D.N.Y. 2007), the court found that where defendant posted large and prominent EEO notices in plaintiff's workplace at least *three years* prior to her first EEO complaint, plaintiff was not entitled to the regulatory exception cited above in 29 C.F.R. § 1614.105(b)(2).  Similarly, in the other cases cited by Defendant, the courts rejected plaintiff's requests for equitable tolling where the employees had repeated access to posted notices.  *See Marinelli v. Chao*, 222 F. Supp. 2d 402 (S.D.N.Y. 2002) (EEO notices were posted on the way to the men's restroom, which plaintiff walked past *every day for several years*, and where the defendant mailed plaintiff brochures and collective bargaining agreements explaining the EEO process and the 45-day time limit); *German v. Pena*, 88 F. Supp. 2d 216 (S.D.N.Y. 2000) (employee passed defendant's EEO notice every day, which was posted on an employee bulletin board adjacent to the only elevator

---

[8]  Defendant's attempt to distinguish the *Gilbert* and *Johnson* decisions is unpersuasive.  In *Gilbert*, the court's decision hinged on Plaintiff's status as an applicant and the brief contact with the EEO postings, rather than the precise number of minutes Plaintiff was at the location.  Similarly, the *Johnson* court clearly established that applicants do not have constructive knowledge of the EEO requirement despite the presence of postings on an employer's premises – regardless of where and how they are displayed, or how long applicants are in the employer's office.

servicing the floor); *Judge v. Henderson*, 172 F. Supp. 2d 410 (S.D.N.Y. 2001) and *Rosario v. Potter*, No. 07 Civ. 5891, 2009 WL 3049585 (S.D.N.Y. Sept. 23, 2009).[9]

Defendant stretches even further to argue that Plaintiffs had constructive notice because EEO information was available on the Census Bureau's website. Defendant submits no support for this position, and the argument is disingenuous. Defendant knows full well that many of the applicants for the temporary positions at issue in this case are low-income individuals struggling in a difficult economy, with limited, if any, access to the internet. Defendant's citation to *Berry v. Florida Int'l Univ. Bd of Trustees*, 2008 WL 410129 (S.D.Fla. 2008), to support its website notice theory is unavailing. In *Berry,* the plaintiff alleged that defendant induced him to miss the filing deadline, but the facts showed that the inducement occurred after the deadline had passed. The court noted that plaintiff was a professor with a Ph.D. who knew his rights and had discussed filing the charge with EEOC officials, and the court stated in a footnote that EEOC filing information was accessible on the internet. Clearly, the equities in *Berry* balance in the opposite direction from Ms. Houser, a retired, low-income applicant. Furthermore, if the Court were to accept Defendant's argument that a website alone provides universal notice, it would eviscerate the plain language of the exceptions contained in 29 C.F.R. § 1614.105(b)(2).

The remaining cases cited in the motion are equally unsupportive of Defendant's position because their facts are inapposite to this case. For example, in *Boos v. Runyon*, 201 F.3d 178 (2d Cir. 2000), the court found that plaintiff's claims of "paranoia, panic attacks, and depression"

---

[9]  Defendant also contends that Ms. Houser had knowledge of the 45-day time limit because she previously worked for the Census Bureau in 1990 as a decennial employee, and her complaint admits that she was involved in hiring and interviewing candidates. However, the EEOC recognized that she had no actual knowledge of the 45-day time limit, and there is nothing in the Amended Complaint to suggest otherwise. Exh. A to K. Anderson Decl. *See Pauling v. Secretary of Dept of Interior*, 160 F.3d 133 (2d Cir. 1998) ("Precisely because the 45-day limitations period is unusually short, the court erred in charging him with knowledge of this time limit on the mere basis of his conceded knowledge of EEO processes generally").

were conclusory and vague, and thus did not justify equitably tolling the 45-day period to seek EEO counseling.[10]

Lastly, through the discovery process, Plaintiffs have become aware of another Census applicant who has a right to sue based on a timely charge of discrimination. This individual made informal and formal charges in 2009, and received a notice from the Department of Commerce of a right to sue as of April 12, 2010 – coincidentally, one day prior to the filing of the initial federal court Complaint in this case. On May 21, 2010, the Department of Commerce sent this claimant a notice that her administrative complaint would be held in abeyance indefinitely.[11] Thus, even if Defendant were to succeed in challenging the timeliness of Ms. Houser's charge, this case could proceed on the basis of this second right-to-sue notice.

## III.   DEFENDANT HAS BEEN ON CLASS-WIDE NOTICE SINCE THE INCEPTION OF HIRING FOR THE 2010 CENSUS

Defendant contends that even if Plaintiffs' administrative charge were timely, it fails to adequately plead class claims because Ms. Houser's charge did not proceed along the particular path set forth in the regulation establishing the charge filing process for class-wide discrimination claims against federal agencies. The only way Defendant is able to make this argument is by (1)

---

[10] *See also Torres v. U.S. Dep't of Veteran Affairs*, No. 02 Civ. 9601, 2004 WL 691237 (S.D.N.Y. Mar. 31, 2004) (plaintiff neither alleged that she sought EEO counseling within 45 days of the allegedly discriminatory act, nor did she argue waiver, estoppel or an equitable toll); *Dillard v. Runyon*, 928 F. Supp. 1316 (S.D.N.Y. 1996) (rejecting plaintiffs argument that the 45 day deadline should be equitably tolled because she still believed that she worked for the USPS even after her termination); *Moultrie v. Potter*, No. 04 Civ. 6887, 2006 WL 1495234 (S.D.N.Y. May 31, 2006) (plaintiff failed to show that his employer caused him to not seek EEO counseling within required time period); *Brown v. General Servs. Admin*, 425 U.S. 820, 832 (1976) (plaintiff failed to appeal the agency's determination and was untimely in filing his complaint in district court); *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20 (2d Cir. 1985) (holding that where plaintiff was an experienced attorney and had 300 days to file a complaint, equitable tolling should not apply); *Fausto v. Reno*, 955 F.Supp. 286 (S.D.N.Y. 1997) (declining to extend equitable tolling to plaintiff, a paralegal, who did not contact an EEO counselor until approximately four years after the discriminatory treatment and despite being aware of the time limits for initiating contact with EEO counselor, plaintiff did not try to extend such limit); *Holdmeyer v. Veneman*, 321 F.Supp.2d 374, 382 (D.Conn. 2004) (plaintiff did not argue for equitable tolling).

[11] Defendant may contend that this claimant did not file her informal charge within 45 days. However, even if true, this would be irrelevant, as Defendant has taken the position in this motion that during the investigation phase, the Department of Commerce can "choose whether to press the timeliness defense or waive the defense." (Def's Mot. Dismiss 18). Here, Defendant allowed the formal complaint to proceed past 180 days without pressing a timeliness defense, thereby waiving it.

refusing to acknowledge the holding of *Zipes* that actual notice and an opportunity for remediation satisfy the objective of the administrative exhaustion requirement, and (2) by willfully ignoring the wealth of information in the Amended Complaint establishing that Census has been on notice of its class-wide discriminatory policies and practices since the inception of hiring for the 2010 census. Defendant's motion also fails to mention that other administrative charges have been filed, meeting all formal requirements asserted by Defendant and covering all conceivable factual configurations.

### A.   Defendant Received Actual Notice by the EEOC and through the Filing of Numerous Charges

As discussed above, the Department of Commerce and the Census Bureau were placed on *actual* notice of the class-wide discriminatory impact of Census' criminal background check process *prior* to Ms. Houser's charge.[12]  Defendant also has been on notice of the class-wide discriminatory impact of Census' criminal background screening policy since the very outset of the 2010 decennial hiring process through the EEO complaints of numerous deterred and excluded applicants.  The legal test for whether any given charge is sufficient to support a class-wide claim is: 1) whether the class claim was reasonably within the scope of the charge filed with the agency, and 2) whether the class claim would have been discovered by the agency in the course of a reasonable investigation.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001).  There is no magic language or formula that must be followed.  As the Supreme Court held in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the Congressional

---

[12] The July 10 letter from the Acting Chair of the EEOC to Defendant Locke is analogous to a Commissioner's Charge pursuant to Section 706 of Title VII, whereby an EEOC commissioner is authorized to file a group charge when an employer has engaged in a pattern or practice of discrimination.  *See Gen. Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 333-34 (1980); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 62 (1984).[13] *See also Contreras v. Ridge*, 305 F. Supp. 2d 126, 133 (D.D.C. 2004) (holding that while plaintiff's EEOC charge only alleged that defendant's denial of promotions to Hispanic applicants, this encompassed a host of other class claims that were reasonably related to the denial of promotions claim); *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978); *Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir. 1988) ("Although the EEOC charge does not use the words "similarly situated" or allege specifically that a class action is going to be brought, the charge provides sufficient notice to the parties to encourage meaningful conciliation, the purpose of requiring it").

purpose of protecting employee rights means that even informal and ambiguously worded documents may constitute charges that put the employer on notice to investigate and take remedial action. *Id.* at 402-06.[13]

As early as *October 2008*, an African American applicant filed a formal charge of race discrimination, challenging Census' rejection of his application for temporary employment. His complaint states that his challenge was based on the "*disparate and adverse impact*" of Census' criminal background policy on him as a minority worker, noting his understanding that the policy has a "*discriminatory impact on the protected class.*"   AC ¶ 43; Exh. 1. (emphasis added)  In August 2009, another African American applicant filed a formal complaint of class-wide discrimination, alleging that the "Census Bureau's policy or practice of using criminal conviction information to screen out candidates for hire is discriminatory in that it has a disparate impact on African Americans…"  The complaint specifically sought "*class* and individual injunctive, declaratory and monetary relief (back and front pay) and all other relief provided for under Title VII."  AC ¶ 49; Exh. 2. (emphasis added).

A plain reading of Ms. Houser's charge filed in 2009 shows that it also put Defendant on notice that Census was using a uniform discriminatory policy across the entire spectrum of applicants for temporary positions, thereby creating a class-wide issue.  Exh. A to K. Anderson Decl.  Ms. Houser's charge explicitly challenged "the disparate impact of [the Census Bureau's] policies about criminal records on African-Americans." *Id.* (Informal EEO Complaint, signed August 10, 2009).  She thereby identified the uniform background check policy, and alleged its

---

[13] *See also Contreras v. Ridge*, 305 F. Supp. 2d 126, 133 (D.D.C. 2004) (holding that while plaintiff's EEOC charge only alleged that defendant's denial of promotions to Hispanic applicants, this encompassed a host of other class claims that were reasonably related to the denial of promotions claim); *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978); *Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir. 1988) ("Although the EEOC charge does not use the words "similarly situated" or allege specifically that a class action is going to be brought, the charge provides sufficient notice to the parties to encourage meaningful conciliation, the purpose of requiring it").

impact on an entire racial group rather than just herself.  *See Butts v. City of New York Department of Housing Preservation and Development*, 990 F.2d 1397, 1402-03 (2d Cir. 1993) (noting that "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge" are reasonably related to the initial charge for the purpose of putting defendant on notice); *Rahman v. Smith & Wollensky Rest. Group, Inc*., No. 06CIV.6198, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) (denying motion to dismiss class claims in part, where individual EEOC charge described hostile work environment that affected other similarly situated employees); *Fantini v. Salem State College,* 557 F.3d 22, 27 (1st Cir. 2009) ("the exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow.'") (internal citation omitted).[14]  Additionally, between July 2009 and April 2010, at least five other putative class members filed formal charges of race discrimination based on Census' criminal background process.  AC ¶ 45; Exhs. 3-9.

These administrative complaints all sufficed to place Defendant on class-wide notice and to trigger a broad investigation.  Even if each of these were deemed individual complaints, the collection of all of them, especially in combination with the July 10 letter from the EEOC, certainly sufficed to place Defendant on notice of a broad-scale problem requiring systemic investigation and remediation.  *See, e.g., Church v. Consolidated Freightways, Inc*., 137 F.R.D. 294, 302-303 (N.D. Cal. 1991) (holding that two charges served to put the EEOC and defendants on notice of class-based nature of discrimination "even though neither is purported to be brought on behalf of others similarly situated.").  Moreover, some of the class-wide charges have

---

[14] Defendant's reliance on *Downes v. Adams*, 33 FEP 929 (E.D.N.Y. 1982) is unavailing, as the court rejected the class claims following full discovery because only two Black plaintiffs had potentially been subjected to discrimination.  The other case cited by Defendant, *Belhome v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) merely states the generic proposition, without facts or analysis, that an individual claim does not, by itself, exhaust a class charge.

followed the precise procedures set forth in 29 C.F.R. § 1614.204 ("Class Complaints").  Exhs. 9, 11, 13, 14.

Additionally, an innumerable quantity of informal charges have been filed – so many that Census has refused to produce them because they, along with other discrimination complaints regarding hiring for the 2010 census, stack over *148 feet* high.[15]  Miller Decl. ¶ 18.   While Defendant prefers to disregard these informal charges because they did not rise to the level of formal complaints, the Supreme Court instructs otherwise.  *See Holowecki I*, 552 U.S. at 405 (noting "instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves [in pre-charge counseling] that action is requested and required"); 29 C.F.R. 204(b) (specifically exempting an individual from mandatory counseling when it becomes apparent that there are actionable class implications to the claim raised in the individual complaint).  In just the past month, numerous additional informal charges have been filed, all of which should proceed to the formal complaint stage within a matter of weeks.  Miller Decl. ¶ 17, Exh. 16-23.

Thus, it is simply a matter of time before Plaintiffs will have exhausted class charges in every conceivable factual configuration.  Rather than allowing those administrative complaints to proceed, Defendant has placed all active complaints into "abeyance," thereby putting Plaintiffs into a Catch-22: they cannot prosecute their case in federal court without going through the federal class complaint procedure, but once they begin that process Census will put their charge on indefinite hold so that they cannot exhaust their claim.  See, e.g., Exh. 6.  This Court cannot countenance such a cynical and manipulative process.  As the Ninth Circuit explained:  "When a government employee seeks to pursue a claim of discrimination under Title VII … the

---

[15] This stack of materials would be taller than a 14 story building or would nearly run the length of an Olympic-size swimming pool.

government cannot be at war with itself.  Protean though it may sometimes be, it cannot … say

that the employee may go forward, while … it [also] says he may not." *Girard* at 1248.

In sum, it is patently clear that notice and the opportunity for remediation occurred along

multiple avenues.  Equity demands that Ms. Houser's charge, viewed in the full context of all

notices to Defendant, be deemed a sufficient basis for this federal class action.

### B.  The Federal Government is not Exempt from Equitable Exceptions to the Administrative Filing Regulations

The notice goals underlying Title VII's exhaustion requirements are the same whether the

defendant being sued is a governmental as opposed to private employer.  As Defendant admits,

"the federal regulations are designed to put the federal agency on notice of class-wide

discrimination and provide the agency with an opportunity to remedy the problem regarding the

class on an informal basis."  Def's Mot. Dismiss 22.   These are the precise goals that underlie

the equitable exceptions recognized in *Zipes.  See Fellows v. Universal Restaurants, Inc*., 701

F.2d 447, 450 -451 (5th Cir. 1983) (the underlying policies of Title VII "are not served by

limiting judicial relief to technical niceties of the language used by an often unlettered or

unsophisticated employee in filing his or her initial grievance."); *Briones,* 101 F.3d 287 at 290

(holding that waiver, estoppel, and equitable tolling apply to the federal government).

In the specific context of 29 C.F.R. § 1614, there is persuasive precedent for allowing a

class action to proceed where the class representatives did not pursue their administrative class

action remedies in the precise manner dictated by the regulation.  In *Fitzwater v. Veterans

Admin.*, 90 F.R.D. 435, 438 (S.D. Ohio 1981), four individuals filed individual administrative

complaints with the Veterans Affairs Administration ("VAA"), but had not filed class complaints

in accordance with the federal regulation.  *Id.*  Overruling defendant's motion to dismiss on

exhaustion grounds, the court noted, "the purpose of the exhaustion doctrine is to alert the

agency involved that a complaint of discrimination is being made and to give that agency the opportunity to remedy specific grievances." *Id*. at 438. The court held that the four individual complaints were sufficient to put the VAA on notice of a pattern of discrimination.

Further, the regulation at issue here does *not* require charging parties to assert detailed class allegations at the instigation of their claim. Rather, class allegations can be asserted well into the investigation period. The EEOC guidelines provide that "a complainant [may] move for class certification at *any reasonable point* in the process," upon determination of class-wide implications of defendant's practice, so long as the complainant does not engage in "undue delay." Exh. 27 (Complaints of Class Discrimination in the Fed. Gov't, EEO MD-110, CH. 8 (E.E.O.C. Mgmt. Dir. Sept. 30, 2003). Indeed, there is precedent for converting an individual charge to a class complaint after over a year and well into the discovery process. Exhs. 25-26 (*Allison v. Potter*, No, 01A04802, 2002 WL 1212248 (EEOC 2002) (remand from Office of Federal Operations of EEOC to federal agency with directions to convert individual complaint into class claim); EEOC Decision, Case No. 570-2008-00018X, Sept. 30, 2010). Here, Defendant prevented Ms. Houser from ever reaching the stage of asserting class allegations by rejecting her claim at the very outset, rather than allowing her to pursue her charge through the full administrative process. It would be contrary to sound legal principles and inequitable to penalize Plaintiffs for failing to meet a condition they were prevented from achieving due to Defendant's actions.[16]

The court in *Downes v. Adams*, No. 81 Civ. 61, 1982 WL 31035 (E.D.N.Y. May 12, 1982), cited by Defendant, looked beyond plaintiffs' adherence to technical requirements, instead considering whether the defendant had notice of plaintiffs' class claims of racial

---

[16] Taking equitable considerations into account is particularly necessary in this context, where claimants have just 15 days from notice by the EEO counselor in which to file a formal complaint, and where that formal complaint must include allegations that parallel a federal court complaint under Rule 23. *See* 29 C.F.R. sec. 1614.105(d).

discrimination.  Because the eight claims at issue were filed by employees of different races, and only one involved the training program plaintiff challenged, the court found that the defendant did not have notice.  *Downes* thus stands in stark contrast to the instant case, where numerous complaints were filed alleging discrimination by the same criminal background policy, along with the July 10 letter from the Acting Chair of the EEOC.

Defendant similarly misrepresents the rationale of the other decisions it cites in support of its position.  For example, in *McKnight v. Gates*, 282 Fed. Appx. 394 (6th Cir. 2008) *cert. denied*, 129 S. Ct. 1380 (2009), the court held that plaintiff failed to exhaust his administrative remedies because his formal complaint only alleged individual as opposed to class claims of discrimination.[17]

### C.  Class Certification Issues are Irrelevant to Exhaustion

Defendant improperly attempts to challenge class certification issues under the guise of exhaustion, by contending that the named Plaintiffs' class charges are too narrow to allow those individuals to represent the full class.  Defendant should not be allowed to prematurely oppose Plaintiffs' class certification motion before Plaintiffs have an opportunity to conduct discovery and file a properly substantiated motion, especially given the Second Circuit's ruling in *Miles v. Merrill Lynch & Co.* ("*In re: IPO Litigation*"), 471 F.3d 24, 41 (2d Cir. 2006), that district courts must "resolve[] factual disputes relevant to each Rule 23 requirement and find … that whatever

---

[17] *See also Murphy v. West*, No. 982308, 1999 WL 64284 (4th Cir. Feb. 11, 1999) (holding that plaintiff failed to exhaust her administrative complaint because she did not respond to the EEO's counselor request for her to provide additional information of the discriminatory conduct); *International Union v. Clark*, No. 02-1484, 2006 WL 2687005 (D.D.C. Sept. 12, 2006) (finding that plaintiffs failed to exhaust class-wide administrative remedies since no member of the class, including the class representative, had filed an administrative complaint); *Pavano v. Shalala*, 95 F.3d 147, 150 (involved a medicare dispute and thus not subject to the notice, equitable tolling and exhaustion principles that govern Title VII cases); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (plaintiff merely alleged that he was discriminated against because of his race and French-Caribbean accent and did not allege that the employer was discriminating against African Americans or Caribbean employees as a group); *Riley v. Potter*, No. 08-5167, 2010 WL 125841 at **3-4 (D.N.J. 2010) (plaintiffs filed individual administrative complaints specific to their own workplaces which did not put the employer on notice of their intention to file class action disability claims); *McKenzie v. Principi*, No. 01-0221, 2001 WL 1005931 at *1 (E.D. La. 2001) (briefly observing that plaintiffs have not made any class allegations, without any discussion of plaintiffs' claims).

underlying facts are relevant to a particular Rule 23 requirement have been established."[18]

Defendant gains no support from the cases presented in the motion, as the rulings occurred far past the motion to dismiss stage.  *See McClain* v. *Lufkin Industries, Inc*.  519 F.3d 264 (5th Cir. 2008) (parties appealed district court's class certification decision on employees disparate impact and treatment claims); *Ulvin* v. *Northwestern Nat. Life Ins. Co*.  943 F.2d 862, 867 (8th Cir. 1991) (affirming district court's order dismissing a plaintiff from a certified class); *Vuyanich* v. *Republic Nat. Bank of Dallas*, 723 F.2d 1195 (C.A.Tex. 1984) (appeal and cross appeal of district court's class certification decision); *Contreras* v. *Ridge*, 305 F.Supp.2d 126 (D.D.C. 2004) (after class was certified, defendant moved for summary judgment on certain class claims); *Holowecki* v. *Federal Exp. Corp*.  644 F.Supp.2d 338, 343 (S.D.N.Y. 2009) (granting defendant's motion for summary judgment).[19]  Once the Court has the benefit of a fully-briefed motion and is presented with all relevant evidence, it will be in a much better position to exercise its informed discretion regarding the propriety of class treatment.  *Parker*, 331 F.3d at 22.

Even if the Court were to address the class scope here, Defendant's attempt to distinguish the named Plaintiffs' claims from the majority of the class must fail.  In fact, all of the named Plaintiffs and putative class members' claims arose from the same unitary policy and practice.  As the Second Circuit has made clear, the purpose of an administrative charge is to give the

---

[18] *See also Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21-22 (2nd Cir. 2003) (reversing premature denial of class certification because the district court had improperly "precluded any class discovery and even the filing of a motion for class certification"); *Bodner v. Banque Paribas*, 202 F.R.D. 370, 373 (E.D.N.Y. 2000) ("discovery . . . is essential to determining whether class certification is appropriate"); *Barnhart v. Safeway Stores, Inc.*, No. S-92-0803, 1992 U.S. Dist. LEXIS 22572, at *9 (E.D. Cal. Dec. 14, 1992) ("It is this court's duty to permit the parties to give the district court <u>all</u> information that the district court <u>might</u> find relevant in making a class action determination.") (emphasis in original).

[19] The one case Defendant cites where defendant moved to dismiss the class allegations at the motion to dismiss stage is inapposite, since the court granted a motion to strike class allegations on the grounds that "[plaintiff's complaint] does not refer to others who suffered discrimination."  *Debose v. Fedex Corp.*, No. 08 Civ. 07042, 2009 WL 1542572, at *1-2 (S.D.N.Y.  2009).

employer sufficient notice to explore conciliation with an identifiable group. *Holtz*, 258 F.3d at

83.   Here, Defendant was put on notice of both its discriminatory screening practices and the

group affected by its policies. Whether the named Plaintiffs were subjected to adverse action at

different points in the process than other class members has no bearing on whether they and the

class are similarly situated.

Nevertheless, Defendant attempts to dice Census' background check practice into

discrete violations by positing that they fall into a "plethora of unrelated categories." Def's Mot.

Dismiss 25.  This argument must fail, as it contradicts Defendant's actions at the administrative

level, where it has placed all pending charges in abeyance, informing the charging parties that all

of the variations by which applicants have been rejected, delayed, or left endlessly waiting are

part of a single policy and practice.   Additionally, there are named Plaintiffs and charging

parties with active complaints on file representing each and every one of these so-called

categories, making this is a futile exercise.  Exhs. 1-23.

The case law cited by Defendant in support of the argument that the named Plaintiffs

charges are too factually dissimilar from the class they seek to represent, is unpersuasive.  In

*Holowecki v. Fed. Express Corp.*, 644 F.Supp.2d 338, 351 (S.D.N.Y.2009), the court dismissed

the claims of three plaintiffs in part because some plaintiffs alleged discriminatory treatment

based on defendant's compensation system while others alleged discrimination from defendant's

performance system.  Similarly, in *Spector v. Board of Trustees of Community-Technical*

*Colleges,* No. 3:06-cv-129, 2007 WL 4800726, at *11 (D.Conn. 2007) a*ff'd sub nom.,* 316 F.

App'x. 18 (2d Cir. 2009), the court found that defendant was not properly put on notice of

plaintiff's retaliation claim when the only plaintiff who had exhausted claimed religious

discrimination.[20]  *See also McClain v. Lufkin Indus.*, 519 F.3d 264 (5th Cir. 2008) (finding that the EEOC could not reasonably have investigated defendant's discriminatory hiring decisions because plaintiffs' rested their EEOC charges on demotion and promotion); *Ulvin v. Northwestern Nat'l Life Ins. Co.*, 943 F.2d 862 (8th Cir. 1991) (although plaintiff's charge complained that defendant demoted and subsequently fired him because of age, he later sought to bring claims based on defendant's early retirement program).  Unlike Defendant's cases, the named Plaintiffs are not seeking to include any claims other than the one and only claim that Ms. Houser brought before the EEOC when she initially filed her charge—that Defendant's criminal records policy has a racially disparate impact.[21]

## IV.    THE NAMED PLAINTIFFS WITHOUT EXHAUSTED CHARGES CAN PIGGYBACK ONTO MS. HOUSER'S CHARGE

Plaintiffs in class action discrimination suits may "piggyback" their otherwise untimely claims onto a valid right-to-sue notice of any other named plaintiff, pursuant to the "single-filing" rule. *Cronas*, 2007 WL 2739769 at *2; *Snell*, 782 F.2d at 1101-02.  The relevant inquiry for application of the rule is whether "the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim," to "afford sufficient notice to the employer to explore conciliation with the affected group."  *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990).  In determining whether the charge is sufficiently similar, the court must consider whether plaintiff's claims are "reasonably related" to the claims made in that charge, "meaning that 'the conduct complained of [by the non-filing plaintiff] would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge

---

[20] In addition, it is worth noting that the court found these claims sufficiently similar at the motion to dismiss stage but found that on a motion for summary judgment, it now had the benefit of discovery and a complete factual record to adequately analyze the parties' arguments. *Id* at 350.

[21] Defendant's citation to *Contreras v. Ridge*, 305 F. Supp. 2d 126 (D.D.C. 2004) supports Plaintiffs' position.  In *Contreras*, the court gave plaintiff's promotion denial charge an expansive reading by including multiple forms of other work-related claims.

of discrimination.'" *Velez v. Novartis Pharms. Corp*., 244 F.R.D. 243, 255 (S.D.N.Y.

2007) (quoting *Holtz*, 258 F.3d at 83).  The Second Circuit has described this principle as

"essentially an allowance of loose pleading." *Holtz,* 258 F.3d at 83 (internal citation and

quotation marks omitted).

Here, Defendant argues that Ms. Houser's charge does not provide support for the other

Plaintiffs to piggyback onto her claim because the "factual underpinnings" of the claims are too

dissimilar.  Specifically, Defendant argues that Ms. Houser's claim is premised on failing to

comply with the 30-day letter, while the five other plaintiffs were either never denied

employment, denied employment based on their criminal history, or denied based on incorrectly

responding to the 30-day letter.[22]  Defendant's argument that Plaintiffs may not piggyback

because there are differences in the "factual underpinnings" of the plaintiffs' claims is without

merit.

First, Defendant misapplies the single-filing rule.  As discussed above, Ms. Houser's

charge identified both the background check policy causing the discrimination and its alleged

impact on an identifiable group.  Exh. A to K. Anderson Decl. (charge explicitly challenged "the

disparate impact of [the Census Bureau's] policies about criminal records on African-

Americans").  Thus, the class-wide nature of the effect of Defendant's criminal screening

policies was reasonably within the explicit scope of Ms. Houser's charge for purposes of the

piggyback doctrine -- all of their claims arose from the disparate impact of the Census Bureau's

criminal screening policies and any reasonable investigation of Ms. Houser's charge would have

revealed the claims of these five individuals.

---

[22]  Defendant is mistaken on the facts.  Ms. Houser complied with the 30-day letter by sending her fingerprints, and she was rejected because Census determined the correct response should have been to find and send her 30 year old court records.

Second, Defendant's authorities mirror those cited with regard to the scope of the class. As discussed above, the decisions in *Holowecki, Spector, McClain, Ulvin*, and *Contreras* fail to support Defendant's argument that Ms. Houser's charge is too factually dissimilar from the other Plaintiffs.  In all of those cases, one set of plaintiffs either was not affected by the hiring policy the other plaintiffs sought to challenge, or a set of plaintiffs sought to challenge completely separate causes of action.  In contrast, all Plaintiffs here challenge the discriminatory impact of the same unitary policy of using arrest and conviction background to screen for employment suitability.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny the Motion to Dismiss in its entirety, so that this case can proceed expeditiously, as Defendant has had more than adequate notice of the claims presented.


Dated: October 8, 2010
        New York, NY

                             Respectfully submitted,
                             **OUTTEN & GOLDEN LLP**

                             By:  _/s/ Samuel R. Miller_____
                                 Samuel R. Miller
                                 3 Park Avenue, 29th Floor
                                 New York, New York 10016
                                 Telephone:  212-245-1000
                                 *Attorneys for Plaintiff and the Putative Class*