**OUTTEN & GOLDEN LLP**
Adam T. Klein
Justin M. Swartz
Samuel R. Miller
Lewis M. Steel
Ossai Miazad
Rachel M. Bien
Melissa Pierre-Louis
3 Park Avenue, 29th Floor
New York, NY 10016

**COMMUNITY SERVICE SOCIETY**
Judy Whiting
Paul Keefe
105 East 22nd Street
New York, NY  10010

**COMMUNITY LEGAL SERVICES, INC.**
Sharon Dietrich*
1424 Chestnut Street
Philadelphia, PA  19102

**LatinoJustice PRLDEF**
Richard Bellman
Jackson Chin
99 Hudson Street, 14th Floor
New York, NY 10013

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
Ray P. McClain*
Jane Dolkart**
1401 New York Ave., NW
Washington, DC  20005

**CENTER FOR CONSTITUTIONAL RIGHTS**
Anjana Samant
Darius Charney
666 Broadway 7th Floor
New York, NY 10012

**INDIAN LAW RESOURCE CENTER**
Robert T. Coulter*
602 North Ewing Street
Helena, MT 59601

**PUBLIC CITIZEN LITIGATION GROUP**
Michael T. Kirkpatrick*
1600 20th St. NW
Washington, DC  20009

*Admitted pro hac vice*
**Pro hac vice forthcoming*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE JOHNSON, EVELYN HOUSER, SANDRA ANDERSON, ANTHONY GONZALEZ, IGNACIO RIESCO, PRECIOUS DANIELS, and FELICIA RICKETT-SAMUELS on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GARY LOCKE, Secretary, United States Department of Commerce,<br><br>        Defendant. | **10-cv-3105 (FM)**<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFEDANT'S MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD............................................................................................................... 3

ARGUMENT ........................................................................................................................... 3

I.    Plaintiffs  Have Standing to Pursue their Injunctive and Declaratory Relief Claims ...... 3

II.    Defendant Cannot Meet its Heavy Burden to Demonstrate Mootness .......................... 6

    1.    Census has Not Abandoned its Illegal Criminal Background Check Practice........... 6

    2.    Plaintiffs Have a Legally Cognizable Interest in the Outcome. ............................... 9

    3.    Injunctive Relief is Warranted where a Dispute is Capable of Repetition yet Evading
        Review.................................................................................................................... 10

III.    Plaintiffs' Claims for Injunctive Relief are Ripe ......................................................... 11

IV.    The Court Cannot Dismiss Plaintiffs Claims for Declaratory and Injunctive Relief Prior
       to Discovery ................................................................................................................ 13

CONCLUSION...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs v. Gardner,*
    387 U.S. 136 (1967)....................................................................................................12

*Albemarle Paper Co. v. Moody,*
    422 U.S. 405 (1975)....................................................................................................12

*Allee v. Medrano,*
    416 U.S. 802 (1974)......................................................................................................8

*Alliance of American Insurers v. Cuomo,*
    854 F.2d 591 (2d Cir. 1988).......................................................................................13

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) .......................................................................................7

*Atlanta Gas Light Co. v. Aetna Casualty & Surety Co.,*
    68 F.3d 409 (11th Cir. 1995) .......................................................................................3

*Barnett v. County of Contra Costa,*
    No. C04-4437 TEH, 2005 WL 5095264, at *3 (N.D. Cal. Oct. 31, 2005)...............14

*Bonfiglio v. New York Presbyterian Hospital Weill Cornell Medical Center,*
    10 CIV. 4939 (SAS), 2011 WL 2436706 (S.D.N.Y. June 16, 2011)........................3

*Bronx Household of Faith v. Board of Education of New York,*
    492 F.3d 89 (2d Cir. 2007)........................................................................................11

*Brooklyn Legal Serivces Corp. v. Legal Services Corp.,*
    462 F.3d 219 (2d Cir. 2006)......................................................................................11

*Camreta v. Greene,*
    131 S.Ct. 2020 (2011)..................................................................................................6

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)........................................................................................................5

*Clarry v. United States.,*
    85 F.3d 1041 (2d Cir. 1996).........................................................................................5

*Comer v. Cisneros,*
    37 F.3d 775 (2d Cir. 1994)...........................................................................................3

*Connecticut v. Duncan,*
    612 F.3d 107 (2d Cir. 2010).......................................................................................12

*Davis v. FEC,*
   554 U.S. 724 (2008)..........................................................................................10

*Del Monte Fresh Produce Co. v. United States,*
   570 F.3d 316 (D.C. Cir. 2009)....................................................................3, 10

*Deshawn E. by Charlotte E. v. Safir,*
   156 F.3d 340 (2d Cir. 1998)...........................................................................7

*Doner-Hendrick v. New York Institute of Technology,*
   11 CIV. 121 (SAS), 2011 WL 2652460 (S.D.N.Y. July 6, 2011) ............................3

*Easterling v. State of Connecticut,*
   265 F.R.D. 45 (D. Conn. 2010).......................................................................8

*Etuk v. Slattery,*
   936 F.2d 1433 (2d Cir. 1991)..........................................................................6

*Federal Election Commission v. Wisconsin Right to Life, Inc.,*
   551 U.S. 449 (2007).....................................................................................10

*Fitzgerald v. Thompson,*
   33 Fed. App'x. 532, 535 (2d Cir. 2009).............................................................9

*Fox v. Board of Trustees of State University of New York,*
   42 F.3d 135 (2d Cir. 1994).............................................................................9

*Gerstein v. Pugh,*
   420 U.S. 103 (1975).....................................................................................10

*Hirsch v. Arthur Andersen & Co.,*
   72 F.3d 1085 (2d Cir. 1995).......................................................................3, 4

*International Brotherhood of Teamsters v. United States,*
   431 U.S. 324 (1977).....................................................................................12

*Jackson-Bey v. Hanslmaier,*
   115 F.3d  1091, 1096 (2d Cir. 1997).................................................................9

*Johnson v. Disrict of Columbia,*
   461 F. Supp. 2d 48 (D.D.C. 2006)..................................................................14

*Lillbask ex rel. Mauclaire v. State of Connecticut Department of Education,*
   397 F.3d 77 (2d Cir. 2005)............................................................................10

*Los Angeles County v. Davis,*
   440 U.S. 625 (1979)......................................................................................6

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...................................................................................4, 5

*Moore v. Hosemann,*
    591 F.3d 741 (5th Cir. 2009) ...................................................................10

*In re National Australia Bank Securities Litigation,*
    No. 03 Civ. 6537, 2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006) ..............9

*National Park Hospitality Association v. Depaprtment of Interior,*
    538 U.S. 803 (2003)...................................................................................11

*National Wrestling Coaching Association v. Department of Education,*
    366 F.3d 930 (D.C. Cir. 2004) ...................................................................4

*New York Civil Liberties Union v. Grandeau,*
    528 F.3d 122 (2d Cir. 2008).......................................................................12

*Roe v. Wade,*
    410 U.S. 113 (1973)...................................................................................10

*Rubick v. Cattaraungus & Wyoming County Project Head Start, Inc.,*
    00-CV-057E F., 2000 WL 1568597 (W.D.N.Y. Oct. 5, 2000).................13

*Schaake v. Risk Management Alternatives, Inc.,*
    203 F.R.D. 108 (S.D.N.Y. 2001) ..............................................................13

*Shain v. Ellison,*
    356 F.3d 211 (2d Cir. 2004).......................................................................5

*Sheehan v. Purolater Courier Corp.,*
    676 F.2d 877 (2d Cir. 1982).......................................................................5

*Simmonds v. Immigration and Naturalization Services,*
    326 F.3d 351 (2d Cir. 2003).......................................................................11

*Stauber* v. *City of New York,*
    No. 03 Civ. 9162 (RWS), 2004 WL 1593870 (S.D.N.Y. July 16, 2004) ................6

*Suitum v. Tahoe Regional Planning Agency,*
    520 U.S. 725 (1997)...................................................................................11

*U.S. Parole Commission v. Geraghty,*
    445 U.S. 388 (1980)...................................................................................6

*United States v. Diekemper,*
    604 F.3d 345 (7th Cir. 2010) ...................................................................4

iv

*White River Amusement Pub., Inc v. Town of Hartford,*
   481 F.3d 163 (2d Cir. 2007)..................................................................................................6

*Worth v. Jackson,*
   451 F.3d 854 (D.C. Cir. 2006) .............................................................................................13


**OTHER AUTHORITIES**

Charles Alan Wright *et al,*
   *Federal Practice and Procedure* § 3531.12 (3d ed. 2011) ......................................................11

## PRELIMINARY STATEMENT

When Plaintiffs first filed suit against Defendant in April 2010, alleging a massive violation of Title VII, the Census Bureau was in the midst of what the Director called "the largest non-military mobilization in the United States to count every resident in America." (Ex. 10, Statement of Robert Groves dated Feb. 23, 2010 ("Groves Statement") at 2).[1]  At that time, Census was hiring temporary workers at a rate of 80,000 people per week.  (Ex. 6 (Transcript of Janet Cummings, May 6, 2010 ("Cummings Tr.") 24:19-11).  Upon filing suit, each Plaintiff had been explicitly or constructively barred from employment, and the Court had the capacity to redress those injuries through issuance of declaratory and injunctive relief.  Thus, Plaintiffs had standing to challenge Defendant's discriminatory practice and seek injunctive relief, because standing is assessed on the day that the suit commences.  Once standing has been established, it remains, and is not a mutable attribute that comes and goes, or that can be re-tested at other points in the life of the litigation.  The Court therefore should deny Defendant's challenge for lack of standing.

Any assessment of the justiciability of Plaintiffs' injunctive relief claim after the commencement of the suit must be conducted through the lens of mootness, where the defendant carries the burden of showing that the violation could not reasonably be expected to recur. Defendant cannot carry that burden here, since Census continues to conduct criminal background checks for all "intercensal" (i.e. non-decennial) hiring, and it will continue to do so for at least a portion of the temporary hires for the 2020 decennial.  Similarly, Plaintiffs' injunctive claims are ripe, especially since the actual determination of entitlement to and the shaping of an injunctive

---

[1] As used throughout this brief, "Ex." refers to exhibits attached to the Declaration of Samuel R. Miller ("Miller Decl."), filed herewith.

remedy will be performed after a liability finding and thus much closer in time to formulation and implementation of the 2020 decennial policy.

To the extent that factual questions remain as to the practices for intercensal and 2020 decennial hiring, the Court cannot rule in Defendant's favor without allowing for full discovery on the issue.  In fact, in the Second Circuit it is an abuse of discretion for this Court to do so. While Defendant has submitted some factual evidence with its motion, much of it contradicts the public record or sworn testimony of Census officials, and the submissions raise more questions than they provide answers, thus highlighting the impropriety of a ruling in Defendant's favor at this time.

On a final point, Defendant's motion represents a continuation of Census's pattern of avoiding accountability for its criminal background screening practices.  Before this suit was filed, Census had successfully shrouded these practices from public scrutiny, even from the U.S. Congress.  Through the suit, Census was forced to expose the 30-day letter process and arbitrary "adjudication" criteria that lie at the heart of the discrimination affecting hundreds of thousands of people.  Now, through this motion, Defendant attempts to return to conducting its background checks clandestinely, without being answerable to the Court.  This is especially troublesome in that it contravenes the nation's strong public policy—which ought to be exemplified rather than flouted by a U.S. government agency—supporting the elimination of racial discrimination through use of the judicial process, especially through the effective enforcement of Title VII of the Civil Rights Act of 1964.

**LEGAL STANDARD**

When considering a motion to dismiss pursuant to Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Doner-Hendrick v. New York Inst. of Tech.*, 11 CIV. 121 (SAS), 2011 WL 2652460 (S.D.N.Y. July 6, 2011); *Bonfiglio v. New York Presbyterian Hosp. Weill Cornell Med. Ctr.*, 10 CIV. 4939 (SAS), 2011 WL 2436706 (S.D.N.Y. June 16, 2011).  In the context of a Rule 12(b)(1) challenge to standing to seek a claim for injunctive or declaratory relief, Plaintiffs "must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995) (citation and internal quotation marks omitted).

**ARGUMENT**

I.      **Plaintiffs  Have Standing to Pursue their Injunctive and Declaratory Relief Claims**

Defendant argues that because the 2010 decennial census has now concluded, Plaintiffs are unable to allege facts that establish an immediate threat of harm required for standing. (Defendant's Motion to Dismiss ("Def's Mot. Dismiss") 11-12).  Defendant ignores the most basic rule of standing: Standing is determined by a snapshot of the justiciability of each plaintiff's claims at the time of filing.  *See Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir. 1994) ("These constitutional minima are assessed as of the time the lawsuit is brought."); *Atlanta Gas Light Co. v. Aetna Casualty & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (standing is determined by "look[ing] to the state of affairs as of the filing of the complaint"); *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009) (same).[2]  Thus, the

---

[2] Contradicting its argument that standing can be evaluated throughout the litigation, Defendant concedes at one point that standing is appropriately resolved "at the outset of a case." (Def's Mot. Dismiss 8 n. 3).

proper inquiry relating to standing is whether Plaintiffs alleged an injury caused by the defendant for which the court could grant relief on the day the complaint was filed.

When a motion is brought early in the litigation to challenge a plaintiff's standing, courts apply a low evidentiary threshold to find justiciability, recognizing the importance of discovery on this jurisdictional issue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (comparing the lower burden to establish standing at the motion to dismiss stage with the higher burden on a motion for summary judgment); *Nat'l Wrestling Coaching Ass'n v. Dep't of Educ.*, 366 F.3d 930, 951 (D.C. Cir. 2004) (at motion to dismiss, "plaintiffs' burden is simply to make the requisite allegations"); *United States v. Diekemper*, 604 F.3d 345, 350 (7th Cir. 2010).

Applying the Second Circuit test – i.e. (1) personal injury (2) traceable to the defendant that is (3) redressable – Plaintiffs surpass the minimal threshold to establish standing. *Hirsch*, 72 F.3d at 1091.  Defendant does not dispute that at the time Plaintiffs filed their complaint, the background screening policy and practice used as part of the 2010 Decennial was in mid-stream, and Plaintiffs alleged injuries that were traceable to these policies.  In fact, some Plaintiffs received actual rejection letters (Scott, Samuels, Desphy, Houser, Anderson) (Second Amended Complaint ("SAC") ¶¶ 60, 71, 78, 100, 110), while others never received a response (Gonzalez, Riesco, Daniels, Kargbo) (SAC ¶¶ 83, 91, 94, 107), and yet others were so delayed in being found eligible that they missed the hiring cycle (Johnson) (SAC ¶ 56).  As of April 2010, declaratory and injunctive relief would have redressed Plaintiffs' injuries by removing the 30-day letter barrier and mandating a fair hiring process with adjudication criteria focused on a realistic assessment of potential risk. (SAC ¶¶ 151-153).  Substantial hiring continued for several months thereafter and Defendant states that "the last appointments that were subject to the challenged policies and practices expired on June 18, 2011." (Def's Mot. Dismiss at 12).  Thus,

4

as of the date of filing, it was "likely, as opposed to merely speculative, that the injury [would] be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citations and internal quotation marks omitted).[3]

Unremarkably, the cases cited by Defendant finding a lack of standing for injunctive and declaratory relief relate to situations where there was no ongoing violation or reasonable expectation of future violations of statutory rights.  In *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004), a single plaintiff case, the Second Circuit rightly determined that plaintiff, an attorney with no criminal record, would not again find himself in a position to be strip-searched in the county jail.  Similarly, in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the plaintiff relied on an arrest that occurred prior to the filing of his complaint to seek injunctive relief for arrests that could occur in the future, and the Court found that he was unlikely to be in that situation again. In *Clarry v. United States.*, 85 F.3d 1041 (2d Cir. 1996), the plaintiffs sought declaratory relief aimed at a directive precluding them from striking, despite the fact that the directive had been *rescinded* by President Clinton prior to the filing of the complaint.  The contrast to the present action – where Defendant acted and continues to act pursuant to official policy, where the injury is real and immediate, where future hiring is a factual certainty, and where there are so many actual and potential class representatives – could not be sharper.

## II.        Defendant Cannot Meet its Heavy Burden to Demonstrate Mootness

Having established standing at the time the suit was filed, the next step in determining whether Plaintiffs are still entitled to injunctive relief is to ascertain whether that entitlement has

---

[3]  Following the filing of the Complaint and targeted discovery, Plaintiffs chose not to seek a preliminary injunction, due to the lack of time to achieve significant class relief prior to the close of the major hiring activity (Ex. 3 (Letter dated May 12, 2010 to Judge Berman)).  Nevertheless, the Court had jurisdiction and the *capacity* to order injunctive relief, even if just for the named Plaintiffs, at the time the suit was filed.  *See, e.g, Sheehan v. Purolater Courier Corp.*, 676 F.2d 877, 884 n. 11 (2d Cir. 1982) (in a Title VII case, the court may "exercise its equity powers to the fullest").

become moot.  *See Stauber* v. *City of New York*, No. 03 Civ. 9162 (RWS), 2004 WL 1593870, at

*19 (S.D.N.Y. July 16, 2004) ("the alleged abandonment of a policy presents an issue of

mootness, not standing").   The question becomes whether defendant can show that "subsequent

events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be

expected to recur." *Camreta v. Greene*, 131 S.Ct. 2020, 2034 (2011) (citation omitted); *see also*

*U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 395-97 (1980) (standing tests "[t]he requisite

personal interest that must exist at the commencement of the litigation," while mootness tests

whether the issue remains live throughout the litigation's existence).  Unlike standing, where the

burden is on the plaintiff, a defendant seeking to have the case dismissed bears the burden of

demonstrating mootness and that burden is a "heavy one."  *Los Angeles Cnty. v. Davis,* 440 U.S.

625, 631 (1979); *Etuk v. Slattery,* 936 F.2d 1433, 1441 (2d Cir. 1991).  For Defendant to meet its

burden to demonstrate mootness, it would have to show (1) that "the issues presented are no

longer 'live' or (2) the parties lack a legally cognizable interest in the outcome." *White River*

*Amusement Pub., Inc v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir. 2007) (quoting *City of*

*Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks omitted)).

### 1.  Census Has Not Abandoned its Illegal Criminal Background Check Practice

Despite Defendant's protestation that the policy and practice Plaintiffs challenge is "no

longer in existence," (Def's Mot. Dismiss at n. 4), the reality is that Census's criminal

background check practice remains very much alive.  With regard to current and future

intercensal hiring, Census continues to hire individuals to perform the same work as decennial

enumerators. (Ex. 4 (Census Recruiting Bulleting for the Field Representative position)); (Ex. 5

(Census webpage defining the role of decennial enumerators)); (Declaration of Vincent Daniels

("Vincent Daniels Decl.") ¶ 4).  Census continuously seeks applicants for these positions during

intercensal years, all of whom are subjected to criminal background screening. (Vincent Daniels Decl. ¶ 5). In fact, Census is in the midst of contacting some of the same individuals who worked during the 2010 decennial and inviting them to apply to do the same work as Field Representatives. *Id.*

Defendant nevertheless tries to distinguish intercensal from decennial hiring by asserting that the screening determinations for intercensal positions are made by the Office of Personnel Management ("OPM"), not by the Census Hiring and Employment Check ("CHEC") office. (Def's Mot. Dismiss at 13). However, the shifting of responsibility for executing this function is immaterial. The question is whether the *criteria* being applied to applicants is the same or similar, and on that question Defendant's evidence is silent. In fact, Defendant's assertion is contradicted by testimony from the director of the CHEC office demonstrating that the CHEC and OPM standards are closely integrated. (Ex. 7 (Transcript of Sandra Patterson, dated May 6, 2010 ("Patterson Tr.")) 34:15 – 35:6) (OPM standards were referenced as part of the 2010 decennial hiring criteria); (*Id*. 41:2 – 8) (all CHEC staff were trained in OPM suitability standards).

With regard to decennial hiring, again Defendant cannot carry its burden of showing that the practice from 2010 has terminated. Census Director Robert Groves has testified that enumeration will continue to include "face-to-face" interviews as part of a multi-modal approach for the 2020 decennial. (Ex. 8 (Statement by R. Groves, dated April 6, 2011 at 8)). In addition, courts frequently allow plaintiffs to rely on custom or continued official policy in proving that they will face the same discriminatory behavior in the future. *See Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (plaintiff may demonstrate that an injury is likely to occur if the plaintiff has been injured previously by a pattern of officially sanctioned conduct); *Deshawn E. by*

*Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998) (plaintiff can show a "likelihood of recurring injury" where an official policy is challenged).  Here, the 2010 background check process was modeled upon that used for the 2000 decennial, and Defendant fails to show that the adjudication criteria have been transformed or that the 30-day letter will not be used for a third decade in a row.  (Ex. 7 (Patterson Tr. at 98:10 – 99:8)) (stating that the CHEC office used a 30-day letter process in 2000 and that "[t]he letter and its intent was the same").

Additionally, some of Defendant's evidentiary references are misleading.  For example, Defendant argues that Census "will likely make major changes for the 2020 Decennial," by asserting that the scope of background screening will change due to Homeland Security Presidential Directive 12 ("HSPD-12").  (Def's Mot. Dismiss at 6, 15).  Yet this directive was issued in 2004, long before the 2010 decennial, so there is nothing new about it.  Further, HSPD-12, by its literal terms, pertains to "security of identification used to gain access to secure facilities where there is potential for terrorist attacks," and has no provision whatsoever regarding background checks.  (Ex. 9 (HSPD-12)).

Defendant's protestation that it has terminated the illegal practice is not unusual in Title VII litigation, and the courts regularly hold employers accountable well into the future in the face of mootness claims.  *See, e.g., Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) ("an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to (their) old ways") (internal quotation marks and citations omitted); *Easterling v. State of Conn.*, 265 F.R.D. 45, 54 (D. Conn. 2010) (although defendant had ceased using the discriminatory physical fitness test, and replaced it with a different "pilot" test, defendant still failed to carry burden of establishing former test was not reasonably likely to recur).

8

### 2.   Plaintiffs Have a Legally Cognizable Interest in the Outcome.

Defendant also cannot show that Plaintiffs lack a legally cognizable interest in the outcome of the injunctive claim.   *See Fox v. Bd. of Tr. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (continued "personal stake" in the case constitutes a legally cognizable interest). Here, each Plaintiff is ready, willing, and able to work for Census if offered a temporary position.  (First Amended Complaint ("FAC")) ¶¶ 52, 58, 68, 73, 78, 86).  Census hiring is ongoing, a number of Plaintiffs *already have applied* for current or future intercensal work, and one Plaintiff (Ms. Scott) has a history of performing intercensal work in 2004. (Declaration of Precious Daniels ("Precious Daniels Decl.")); (Declaration of Anthony Gonzalez ("Gonzalez Decl.)).  Additionally, Plaintiffs are fully prepared to apply for 2020 decennial positions, as they have in the past, and their interest is genuine and realistic.  (SAC at ¶¶ 96, 109); (FAC ¶ 54); (Precious Daniels Decl. ¶ 6); (Gonzalez Decl. ¶ 6).[4]  Census targets retirees and part-time workers for its temporary positions, and the named Plaintiffs continue to fit those characteristics and desire these jobs as good work at good pay.  Thus, Plaintiffs had and continue to have a cognizable interest in having the court issue injunctive relief.[5]

### 3.   Injunctive Relief is Warranted where a Dispute is Capable of Repetition Yet Evading Review

Even if this Court were to find Plaintiffs' claims regarding the 2020 decennial hiring moot, this case fits well within the established exception to mootness for disputes capable of repetition yet evading review.  This exception applies where "(1) the challenged action is in its

---

[4] Even in the unlikely event that at the point of class certification or adjudication on the merits no named Plaintiff is interested in being hired, the commonly accepted solution would be to interpose a class member who does seek employment as a new class representative. *See In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537,  2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006).

[5] Defendant's citations are inapposite. *See Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (person who has not sustained the relevant injury cannot seek equitable relief); *Fitzgerald v. Thompson*, 33 Fed. App'x. 532, 535 (2d Cir. 2009) (plaintiffs did not have standing to seek an injunction stopping a lease because they had never applied for the lease themselves).

duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Davis v. FEC,* 554 U.S. 724, 735 (2008) (citing *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 462 (2007)); *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.,* 397 F.3d 77 (2d Cir. 2005).

With respect to duration, Census's decennial background screening policy and practice is without a doubt in effect for too short a duration to be fully litigated. *See Roe v. Wade*, 410 U.S. 113, 125 (1973) ("evading review" means evading Supreme Court review). Due to the time frame of decennial hiring, efforts to challenge these policies cannot be fully litigated before the policies cease operation, especially given the 180 day administrative investigation period that is a mandatory precursor to filing suit. *See, e.g., Wisconsin Right to Life, Inc.,* 551 U.S. at 462-64 (due to short nature of elections, court allowed challenge to campaign advertisement regulation after election campaign was complete ); *Moore v. Hosemann,* 591 F.3d 741, 744 (5th Cir. 2009) (election); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (pretrial detention); *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009) (one-year licensing).

With respect to future applications of Census's criminal background screening policy, there is a reasonable expectation that Plaintiffs will be subject to the illegal screen for 2020 decennial hiring, especially given Defendant's admission that it will continue to engage some temporary workers in door-to-door enumeration, that its only changes to the background screen are to make it *more* strict, and that Plaintiffs have an expressed desire and objective qualifications for the positions, as discussed in section II, *supra.* The bottom line here is that Defendant would have Plaintiffs again apply for census jobs, again suffer disparate impact

10

discrimination, and again bring suit too late to attain an equal opportunity for employment – a process and result this Court cannot condone.

### III.    Plaintiffs' Claims for Injunctive Relief are Ripe

Defendant repackages its standing argument under the rubric of "ripeness," claiming that Plaintiffs seek to challenge "policies and practices that have not yet been developed," such that judicial review of Census's future hiring policies and practices is premature.  (Def's Mot. Dismiss at 21).  Because intercensal hiring is in progress at this moment, by definition the ripeness argument must be limited to 2020 decennial hiring.  Even with this focus, Defendant's challenge is without merit.

The doctrines of Article III standing and constitutional ripeness have significant overlap.  *See Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006); 13B Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3531.12 (3d ed. 2011).  Ripeness doctrine is invoked to determine whether a dispute has matured to a point that warrants decision.  *See Bronx Household of Faith v. Bd. of Educ. of N.Y.*, 492 F.3d 89, 111 (2d Cir. 2007).  Ripeness doctrine has both constitutional and prudential components.  *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n.7 (1997).

For a case to be constitutionally ripe, "*absolute* certainty of injury is not required."  *Simmonds v. I.N.S.*, 326 F.3d 351, 358 (2d Cir. 2003) (emphasis in original).  In *Simmonds*, the Second Circuit held that an inmate serving an indeterminate life sentence could challenge INS removal proceedings that would only occur once the inmate was released from prison, despite the possibility that plaintiff would never be released.  *Id.*  Here, Plaintiffs' injuries are at least as concrete and current as the injury to the plaintiff in *Simmonds*, demonstrating a "concrete dispute

affecting cognizable current concerns of the parties" sufficient to make the case constitutionally ripe. *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131 (2d Cir. 2008) (internal quotation marks omitted).

For prudential ripeness, courts evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967). The facts adduced thus far regarding the plan to use door-to-door enumerators for the 2020 decennial, along with the continuation of a policy to conduct criminal background checks, show that this claim is fit for decision. With respect to hardship, as discussed above in the context of the "evading review" analysis, no applicant can bring an effective suit against the decennial hiring process if forced to wait until that process has begun. If this Court were to decide that Plaintiffs claims are not ripe, Defendant would be permitted to deprive Plaintiffs of their right to an equal opportunity to compete for Census positions. *See Connecticut v. Duncan*, 612 F.3d 107, 115 (2d Cir. 2010) ("[T]he hardship prong . . . alone can, if sufficiently weighty, render a claim ripe."). This would be inconsistent with the core purpose of Title VII. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364 (1977) (Congress imposed duty on the district courts "to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future"); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) (a central purpose of Title VII is "eradicating discrimination throughout the economy").

Defendant cites only one Second Circuit case in support of its ripeness argument. (Def's Mot. Dismiss at 21-22) (citing *Duncan*, 612 F.3d at 112, 115). However, Defendant's reliance on *Duncan* is misplaced and is based on a fundamental misconception of the hardship caused by delay in this case. *Duncan*, like many ripeness cases, was a pre-enforcement challenge to agency

action that is entirely distinguishable from the context of employment discrimination here.[6]

Further, the reality here is that the Court will not actually be faced with a decision on the

issuance of injunctive relief until after a finding of liability, which will be a considerable time

from now. On the other end of the timeline, hiring for the 2020 decennial likely will begin in

2018 (using the past decennial as a measure), and the policy for that hiring must be designed and

finalized well in advance. Thus, the time between issuance of the injunction and development of

the policy will be far more compressed than Defendant posits. By the time this Court is faced

with the actual issuance of an injunction, the issue will be quite mature.[7]

## IV.     The Court Cannot Dismiss Plaintiffs' Claims for Declaratory and Injunctive Relief Prior to Discovery

The Second Circuit has held that it is an abuse of discretion to grant a motion to dismiss

for lack of jurisdiction without allowing for adequate discovery. *Alliance of American Insurers*

*v. Cuomo*, 854 F.2d 591, 597 (2d Cir. 1988); *see also Rubick v. Cattaraungus & Wyoming Cntys.*

*Project Head Start, Inc.*, 00-CV-057E F., 2000 WL 1568597, at *3 (W.D.N.Y. Oct. 5, 2000)

("before dismissing a claim for lack of jurisdiction, the court should allow the plaintiff to engage

in discovery for the purpose of establishing that it has jurisdiction over the claim"). When the

motion has been brought prematurely, the proper course is to deny the motion and allow

Defendant to resubmit it at summary judgment or class certification. *See Alliance*, 854 F.2d at

---

[6] Defendant's citation of the D.C. Circuit's decision in *Worth v. Jackson*, 451 F.3d 854 (D.C. Cir. 2006), is similarly inapposite. In *Worth*, a public employee brought a discrimination action under Title VII against his employer seeking a prospective injunction. *Id.* at 856. The court held that the claim was unripe in challenging unwritten policies that had yet to affect the plaintiff. *Id.* at 861-62. Here, in contrast to the facts in *Worth*, each plaintiff has already been concretely injured by the employer's policies.

[7] Defendant's attempt to pick off the named Plaintiffs and subvert this class action must fail, and its suggestion that the Rule 68 offers could moot this case is mistaken. Def's Mot. Dismiss 23 n. 8. The courts have made clear that a rejected offer of judgment made to a named plaintiff does not render the case moot. *See Schaake v. Risk Mgmt. Alts., Inc.*, 203 F.R.D. 108 (S.D.N.Y. 2001). Furthermore, the offers extended by Defendant are invalid for failure to offer complete resolution of the claims.

13

598-99; *Johnson v. Dist. of Columbia*, 461 F. Supp. 2d 48, 52 (D.D.C. 2006); *Barnett v. Cnty. of Contra Costa*, No. C 04-4437 TEH, 2005 WL 5095264, at *3 (N.D. Cal. Oct. 31, 2005).

Discovery here would shed far more light on a number of critical questions, including: (1) which aspects of the criminal background policy and practice used as part of the 2010 decennial are still in use, (2) the scale of hiring for intercensal work, (3) the role of the CHEC office in conducting criminal background checks for intercensal hiring,[8] (4) the adjudication criteria applied by OPM for intercensal job candidates, (5) the status of planning for criminal background checks of enumerators and other temporary workers for the 2020 decennial, and (6) the similarity of the criminal background check process used in 2010 as compared to prior decennials. (Ex. 1 (Rule 30(b)(6) Deposition Notice)).[9] Thus, the Court cannot grant Defendant's motion without allowing for adequate discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss Plaintiffs' Claims for Injunctive and Declaratory Relief.

---

[8] The CHEC office employs 50 full-time analysts regularly who are dedicated to intercensal work. (Ex. 7 (Patterson Tr. 8:18-9:6)).

[9] In an excess of caution, Plaintiffs sent Defendant notices of deposition for the three Census officials who submitted declarations, and a Rule 30(b)(6) notice focusing on the issues raised in the motion, with all the depositions scheduled prior to the submission of this brief. Counsel for Defendant was unwilling to comply with those deposition notices, relying on this Court's statement during the pre-motion conference that "it seems to me that you don't actually have to take the discovery if I conclude that you're correct that you need discovery, that's the death knell of their motion." (Ex. 2 (Transcript of Pre-Motion Telephone Hearing, dated June 21, 2011) 12:7-10); (Miller Decl. ¶1). *Cf.* Fed.R.Civ.P. 56(d) (allowing time to obtain discovery where nonmovant cannot present facts essential to justify its opposition).

Dated: August 1, 2011
     New York, NY

                    Respectfully submitted,

                    **OUTTEN & GOLDEN LLP**

                By: /s/ Samuel R. Miller
                    Samuel R. Miller
                    3 Park Avenue, 29th Floor
                    New York, New York 10016
                    Telephone:  212-245-1000
                    *Attorneys for Plaintiff and the Putative Class*

15