USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/11/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
EVELYN HOUSER, et al., on behalf :
of themselves and all others similarly
situated, :

                              Plaintiffs, :

       -against- :   **DECISION AND ORDER**

REBECCA M. BLANK, Acting Secretary, :   10 Civ. 3105 (FM)
United States Department of Commerce,
                                         :
                              Defendant.
----------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

I.   Introduction

        In this putative class action under Title VII of the Civil Rights Act of 1964, the plaintiffs contend that the procedures and criminal history criteria that the Census Bureau used to determine which temporary workers it would hire to assist with the 2010 Census had a disparate impact on minority applicants, many of whom were unable to produce timely proof that they did not have disqualifying criminal convictions. Pursuant to the procedures, if either a name check or a fingerprint check suggested that there might be a problem, the applicants were required to furnish proof of their eligibility within thirty days. The plaintiffs contend that this was insufficient time.

        By letter dated August 31, 2012, the plaintiffs have sought to compel the production of certain documents withheld by the defendant on the basis of the deliberative process privilege. Each of those documents relates to either: (a) the adjudication criteria that the Census Bureau employed to determine whether applicants for jobs could be hired, despite a prior criminal arrest history, to perform services in

connection with the 2010 Census; or (b) the means by which applicants would be fingerprinted and the fingerprint cards would be processed. The plaintiffs also seek to compel the production of a set of draft adjudication criteria that government counsel clawed back after the plaintiff's counsel called attention to them by requesting a clearer copy.

Following the plaintiffs' initial letter, the Court received a series of further letters addressing the applicability of the privilege and whether the documents should be produced, even if the Court determines that they are privileged, because the plaintiffs have established a compelling need therefor. In the course of that letter briefing, the defendant also submitted the declaration of Michael Toland, Chief of the Freedom of Information Act and Information Branch of the Census Bureau, dated October 5, 2012. In that declaration, Mr. Toland sets forth the basis for the defendant's privilege assertions. Additionally, each of the contested documents for which the Census Bureau asserts a claim of privilege has been submitted to the Court for in camera review. Finally, at my request, the defendant has produced a copy of the adjudication criteria in effect at the time that the inadvertently-produced document was disclosed.[1]

---

[1] The entire series of letters to the Court, which will be made part of the docket, is as follows: (a) letter dated August 31, 2012, from Lewis Steel, Esq., of Outten & Golden LLP (the "August 31 Letter"); (b) letter from Assistant United States Attorneys Daniel P. Filor, Tara La Morte, and Natalie N. Kuehler (the "AUSAs"), dated September 6, 2012; (c) letter from the AUSAs dated September 12, 2012 (enclosing the withheld documents); (d) letter from the AUSAs dated October 5, 2012 (enclosing the Toland Declaration); (e) letter from Mr. Steel dated October 15, 2012 (the "October 15 Letter"); (f) letter from AUSAs Filor and Kuehler dated October 22, 2012; (g) letter from AUSAs Filor and Kuehler dated November 7, 2012 (enclosing
(continued...)

## II. Discussion

### A. Applicable Law

The deliberative process privilege applies to materials that are part and parcel of the process of internal agency decisionmaking. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (privilege protects documents comprising part of a process by which policies are formulated). The main purpose of the privilege is to promote better policymaking by encouraging candor in internal deliberations. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001); Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002). Thus, the privilege typically protects memoranda, drafts, recommendations, proposals, and other documents that reflect the opinions of their authors, rather than those of the agency. See Tigue, 312 F.3d at 76 (opinions, recommendations, and deliberations); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) ("recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer"). In order to secure protection under the deliberative process exception, however, the agency must show that a document is both "predecisional" and "deliberative." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999).

---

[1](...continued)
draft adjudication criteria clawed back by the defendant); and (h) letter from AUSAs Filor and Kuehler dated November 8, 2012 (enclosing the Census Bureau's final adjudication criteria as of the date the clawed back document was prepared).

"A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." Tigue, 312 F.3d at 80 (quoting Grand Cent. P'ship, 166 F.3d at 482). Although an agency need not "pinpoint" an exact decision made in reliance on the document, it must show, ex ante, that the document "related to a specific decision facing the agency." Id. This test is designed to distinguish predecisional documents from those that are "merely part of a routine and ongoing process of agency self-evaluation." Id. (internal quotation marks and citations omitted); cf. E.B. v. N.Y.C. Bd. of Educ., 233 F.R.D. 289, 293 (E.D.N.Y. 2005) (distinguishing "policy oriented judgment[s]" from "routine operating decision[s]").

To be deliberative, a document must actually be "related to the process by which policies are formulated." Grand Cent. P'ship, 166 F.3d at 482 (internal quotation marks and citations omitted). Among the factors that may be considered in this regard are whether the document forms an essential link in a specific consultative process, whether it reflects the personal opinion of the writer rather than the policy of the agency, and whether, if released, it would inaccurately reflect or prematurely disclose the views of the agency. Id. Thus, the agency must actually identify and explain the role that a given document has played in the decision-making process. See, e.g., Coastal States, 617 F.2d at 868 ("agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process"). Because deliberative documents reflect the "give-and-take" of agency decisionmaking, id. at 866, purely factual material is not covered by the deliberative process privilege. Envtl. Prot.

4

Agency v. Mink, 410 U.S. 73, 91 (1973). Factual material that is severable "without compromising the private remainder of the documents" consequently must be released. Id.

Even when the Court determines that a document is protected by the deliberate process privilege, its inquiry is not necessarily at an end because the privilege is a qualified privilege which may be overcome when a litigant's need for information outweighs the public's interest in its nondisclosure. Davis v. City of New York, No. 10 Civ. 699 (SAS) (HBP), 2012 WL 612794, at *7 (S.D.N.Y. Feb. 27, 2012). In considering this issue, the factors favoring disclosure include "(1) the relevance of the requested materials to the requesting party's case, (2) the importance of the materials to the requesting party's case, including the availability of the information from alternative sources, (3) the strength of the requesting party's case . . . , and (4) the importance of disclosure to the public interest." Floyd v. City of New York, No. 08 Civ. 1034 (SAS), 2012 WL 3890080, at *1 (S.D.N.Y. Sept. 7, 2012). Factors potentially weighing against disclosure include "(1) threats to public safety, (2) the invasion of government officials' privacy, (3) the weakening of government programs, and (4) the chilling of internal candor." Id.

    B.    Application of Law to Challenged Documents

    1.    Document No. 4 (Bates Nos. 1605-1607) is a set of adjudication criteria proposed for use by the Census Bureau to determine which applicants for Census Bureau jobs would be rejected based on their criminal histories. The document is dated

5

June 2, 2009.  Document No. 32 (Bates Nos. 8582-8589) is a similar set of proposed adjudication criteria that incorporates three different versions of what those criteria might be.  The latter document was distributed to Census Bureau regional directors at a meeting in early December 2009.  Finally, the clawed-back document (Bates Nos. 8541-8543) is yet another version of the draft adjudication criteria.  Although the plaintiffs allege that Mr. Toland has failed to establish that these documents are deliberative and predecisional, even a cursory comparison between the documents and the final criteria promulgated by the Census Bureau confirms that the drafts were part of an evolutionary process through which the final criteria were promulgated.  Indeed, Document No. 32 contains within it three options then under consideration, and Document No. 36 (an email dated December 7, 2009) (Bates No. 8716) shows that the regional directors were being encouraged to provide feedback concerning the option that they preferred.  The predecisional nature of Document No. 4 is further confirmed by handwritten notations thereon which reflect additional proposed changes to the criteria.  All four documents therefore properly are withheld pursuant to the deliberative process privilege.

        2.        Document No. 22 (Bates Nos. 6124-6126) is an email chain, dated April 15, 2008, involving numerous Census executives.  The subject matter of the emails is a proposed Census Bureau response to questions promulgated by Senate Appropriations Committee staff.  Drafts of such public relations materials may properly be withheld if their disclosure would reveal the status of ongoing internal agency deliberations.  See Fox News Network, LLC v. U.S. Dep't of the Treasury, No. 09 Civ.

3045 (FM), 2012 WL 5931808, at *10 (S.D.N.Y. Nov. 26, 2012). Here, however, the document appears mostly to reflect decisions that had already been made. There is one exception relating to a potential unresolved policy concern. Accordingly, before producing Document No. 22, the defendant may redact from the first page of the document the text from "Do we" through the end of the following sentence.

        3.     Document No. 23 (Bates No. 7709) consists of one page of notes made in 2003 by Cathy Lacy, Branch Chief of the Decennial Administrative Branch of the Census Bureau. Ms. Lacy's handwritten notes relate to the background check process and the likelihood of securing adequate funding for it to proceed. The plaintiffs maintain that this document cannot be predecisional because the privilege log states that it addresses whether (a) the federal Office of Personnel Management or the Federal Bureau of Investigation would require the use of name checks or fingerprinting by the Census Bureau, and (b) there was a need for a legal opinion from OPM. (See October 15 Letter at 2-3). In the plaintiffs' view, the document therefore concerns "what other agencies want Census to do," rather than any "actual policy decision internal to Census." (Id. at 2). The plaintiffs also contend that the defendant has failed to establish that the notes reflect "personal opinion" or are "an essential link in any specific consultative process" and, hence, have not shown that they were part of a deliberative process. (See id. at 3) (citing Grand Cent. P'ship, 166 F.3d at 482; Fox News Network, LLC v. U.S. Dep't of the Treasury, 678 F. Supp. 2d 162, 168 (S.D.N.Y. 2009)). These assertions are misplaced because the document clearly reflects that the Census Bureau was considering whether to

7

enhance the mechanisms that it would employ to ensure that Census workers did not pose a threat to community safety. The fact that the Census Bureau saw fit to reach out to other agencies to solicit their views as part of that process does not mean that Ms. Lacy's notes were not part of the Census Bureau's own deliberative process. Accordingly, the document is protected by the deliberative process privilege.

    4. Document No. 29 (Bates Nos. 8372-8382) is an email exchange in early November 2007 between Frank Vitrano, Chief of the Census Bureau Decennial Management Division, and Viola Lewis-Willis, Branch Chief of the Census Bureau Field Division, with other copyees. The subject matter of both emails and the attachments thereto is the identification of risks associated with the fingerprinting protocol that the Census Bureau proposed to adopt for the 2010 Census. The later of the two emails suggests revisions to the remainder of the document, which attempts to catalog those risks and describe the fingerprinting process that would be employed. Although the emails show that individuals within the agency were continuing to air their views regarding the nature and magnitude of the risks that the fingerprinting program entailed, they also confirm that the <u>decision</u> to fingerprint applicants and to have those fingerprints reviewed by the FBI had already been finalized, even if the adjudication criteria remained in a state of flux. Accordingly, the attachments to the emails (but not the emails themselves) must be disclosed.

    5. Document No. 35 (Bates Nos. 8713-8714) is an email dated May 24, 2010, from Marilia Matos, the Census Bureau's Associate Director for Field Operations,

to Brian Monaghan, Chief of the Census Field Division. The email and an attachment thereto concern a proposed change to the criminal background check procedures. The plaintiffs contend that this document cannot be predecisional because the screening process had been fully implemented by 2010 and because the defendant has provided no "explanation as to why there was a sudden need to reformulate" it. (October 15 Letter at 3). The document itself, however, supplies that explanation and confirms that a policy modification was indeed under consideration, even though there was relatively little hiring left to be done. The document therefore falls squarely within the protections afforded by the deliberative process privilege.

   6. Document No. 36 (Bates No. 8716) is a single email, dated December 7, 2009, from Ms. Lewis-Willis to Mr. Monaghan, Ms. Matos, and Janet Cunningham, a Senior Advisor for Decennial Operations. The subject of the email is the three options for adjudication criteria memorialized in Document No. 32. Accordingly, it is clear from the face of the email that it is both deliberative and predecisional.

   7. Document No. 37 (Bates Nos. 8717-8720) is an email, dated December 4, 2009, from Ms. Lewis-Willis to the Census Bureau regional directors (and others), discussing which of the options in Document 32 the Census Bureau should pursue. An attachment to the email reflects an attempt to incorporate certain changes discussed at the December 2009 meeting of the regional directors. The email also seeks comments about the option selected. A comparison of the attachment to the final adjudication criteria establishes that the Census Bureau had not reached a final decision

concerning the criteria. The document therefore is properly withheld pursuant to the deliberative process privilege.

C. Showing of Need

As noted earlier, unlike many other privileges, the deliberative process privilege is not absolute. Accordingly, when a litigant's need for information outweighs the public's interest in nondisclosure, a court may order that the information be produced. Davis, 2012 WL 612794, at *7.

In this case, the plaintiffs argue that the Census Bureau's policies had a disparate impact on minority applicants who were seeking temporary employment with the Census Bureau for the 2010 Census. To prevail on their Title VII claims, however, the plaintiffs will not be required to prove that any Census officials acted with discriminatory intent. See Lewis v. City of Chicago, 130 S. Ct. 2191, 2199 (2010). The documents protected by the deliberative process privilege that relate to the draft adjudication criteria and the proposed change to the background check procedures therefore are not relevant.

In an effort to overcome this conclusion, the plaintiffs note that the defendant has alleged as an affirmative defense that the Census Bureau's "policies, and the application of those policies, were job-related and consistent with business necessity." (August 31 Letter at 5) (citing ECF No. 48 at 14). The plaintiffs thus contend that "[d]ocuments and/or communications concerning the adjudication criteria used in screening applicants with a criminal history, and documents and communications

concerning the FBI background check process may provide highly relevant evidence to the claims and the defenses in this action." (Id.). Having reviewed in camera the documents as to which I have sustained the defendant's claim of privilege, I find that they are not highly relevant to the claims and defenses of the parties. Indeed, their utility would at best be marginal. The plaintiffs therefore have failed to make a showing adequate for this Court to compel the production of those documents.

SO ORDERED.

Dated:    New York, New York
          March 11, 2013

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Ossai Miazad, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, New York 10016

Louis Anthony Pellegrino
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007