UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
EVELYN HOUSER, PRECIOUS DANIELS, FELICIA
RICKETT-SAMUELS, CHYNELL SCOTT, and
SCOTTY DESPHY,

             Plaintiffs,

             10 Civ. 3105 (FM)

v.

PENNY PRITZKER, Secretary, United States
Department of Commerce,

             Defendant.
------------------------------------------------------------------ x

**Reply Memorandum of Law in Further Support of the
Government's Motion for Reconsideration and Clarification of the
Court's Order Dated July 1, 2014**

             PREET BHARARA
             United States Attorney for the
             Southern District of New York
             86 Chambers Street
             New York, New York 10007
             Telephone: 212.637.2746
             Fax: 212.637.2702
             E-mail: tara.lamorte2@usdoj.gov

TARA M. La MORTE
LOUIS A. PELLEGRINO
ELIZABETH TULIS
Assistant United States Attorneys

    – Of Counsel –

**Table of Contents**

Page

Argument ............................................................................................................................. 1

    A. The Court Overlooked Controlling Data Material to Its Conclusion That Commonality Exists as to Both Challenged Policies...................................................................................... 1

        1. The 30-day Letter .................................................................................. 1

        2. The Adjudication Criteria ..................................................................... 2

        3. The Government's Affirmative Defenses ............................................. 5

    B. Reconsideration and/or Clarification Is Warranted of the Court's Rulings That Typicality Is Satisfied With Respect to the 30-day Letter and That the Letter Is Susceptible to Rule 23(b)(2) Relief ........................................................................................................................... 6

    C. In Certifying a Rule 23(b)(2) and Rule 23(c)(4) Class, the Court Overlooked the Import of *Wal-Mart* and Failed to Consider the Ramifications of Its Decision on Absent Class Members ............................................................................................................................. 8

Conclusion .......................................................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cholakyan v. Mercedes-Benz, USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012) .................................................................................7

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ........................................................................................8

*Hecht v. United Collection Bureau, Inc.*,
   691 F.3d 218 (2d Cir. 2012) ........................................................................................9

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ....................................................................................................9

*Peregrine Myanmar Ltd. v. Segal*,
   89 F.3d 41 (2d Cir. 1996) ...........................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ....................................................................................... *passim*

### FEDERAL STATUTES

42 U.S.C. § 2000e-2(k)(1)(A) ................................................................................................3

### MISCELLANEOUS

Joseph Seiner, *The Issues Class*, 56 B.C. L. Rev. (forthcoming 2015) ..............................10

The Court should reconsider its July 1, 2014, order certifying a nationwide class of African-American applicants (the "Order"), which overlooked material matters that impact the propriety of class certification. Tellingly, plaintiffs largely avoid engaging with the merits of the government's arguments, and fail to overcome the reality that maintaining this case as a Rule 23(b)(2) class action would require adjudicating the claims of hundreds of thousands of class members who will have had no notice or ability to opt out, even though many of those absent class members' asserted injuries necessarily do not resemble those asserted by the named plaintiffs, and even though the Supreme Court has unanimously held that class actions involving "individualized monetary claims" must proceed under Rule 23(b)(3), if at all. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

## Argument

### A. The Court Overlooked Controlling Data Material to Its Conclusion That Commonality Exists as to Both Challenged Policies

#### 1. The 30-day Letter

The linchpin of the Court's conclusion that the required commonality exists was its mistaken finding that the government's expert "examin[ed] the results [of the challenged policies][1] by individual locality," and "conclude[d] that the challenged practices had no statistically significant impact in any LCO." (Op. at 36 (citing Siskin Rep. at ¶¶ 50-51)). Indeed, the Court deemed such analysis "[c]ritical" to its conclusion that "the central questions in this case each have a common, classwide answer," (*id.*), and that it need not assess the government's fundamental methodological challenges to plaintiffs' attempt to show a common impact of the 30-day letter on each and every class member (*id.* at 37, 38).

The Court's finding is incorrect. The government does *not* agree that plaintiffs' disparate impact

---

[1] As noted in the government's opening brief and below, although the plaintiffs did not put forward any statistical evidence of disparate impact of the adjudication criteria, the Court mistakenly assumed that plaintiffs' labor economist did put forward such evidence.

claim will "prevail or fail across the class" (Pls. Opp. at 4).  Dr. Siskin's report included *no* LCO-by-LCO analysis of whether either the 30-day letter or the adjudication criteria disparately impacted African-American applicants.  Rather, citing Simpson's Paradox and plaintiffs' experts' own reports in other cases, the government showed that plaintiffs' nationwide analytical method cannot reliably generate a common answer to the question of disparate impact.  (*See* Br. at 11-14).  The point of this analysis was *not* to assess on the merits whether a nationwide disparate impact existed, but rather, to show that the question of impact cannot reliably be analyzed on a nationwide basis.

Tellingly, Plaintiffs ignore this key methodological criticism of their analysis and its disregard of local hiring, instead emphasizing Dr. Siskin's *alternative* findings that no impact exists according to other nationwide metrics, such as comparative letter response rates.  (*See, e.g.*, *id*. at 4, 5).  They further obfuscate the issue by observing that Dr. Siskin did conduct an LCO-by-LCO analysis with respect to *Hispanics*.  But the first argument says nothing about the government's primary, methodological objection, and the second observation ignores that the reconsideration motion has nothing to do with Hispanics.  Thus, plaintiffs have not overcome the government's showing that they did not meet their burden of showing that all class members in every LCO were commonly impacted by the 30-day letter.[2]

## 2. The Adjudication Criteria

As the government's opening brief shows, the Court's conclusion that the "allegedly discriminatory *criminal background procedures*" (*i.e.*, both the 30-day letter and the adjudication criteria) were suitable for nationwide class treatment, (Op. at 36 (emphasis added)), overlooked that

---

[2] Citing the reply expert report of their labor economist, Dr. Bendick, plaintiffs claim to have addressed Dr. Siskin's criticism of their failure to perform an LCO-by-LCO analysis.  (Pls. Opp. at 7-8).  As the Court is aware, however, the government has moved to strike plaintiffs' reply expert reports on several grounds.  (*See* Dkt. Nos. 237-239).  The Court has not yet adjudicated that motion, and, because the plaintiffs submitted this expert report only in reply, the government has not been afforded any opportunity to examine and respond to the flaws in plaintiffs' analysis.

plaintiffs provided *no* evidence that any portion of the challenged adjudication criteria caused a common class-wide impact.  To certify a class challenging both policies, however, the Court must find that plaintiffs put forward evidence that *each* has a common impact.  *See* 42 U.S.C. § 2000e-2(k)(1)(A) (requiring plaintiffs to "demonstrate that each particular challenged employment practice causes a disparate impact."). With respect to the adjudication criteria, plaintiffs put forward no evidence at all.

Plaintiffs now concede that they did not put forward any evidence of a methodology for assessing disparate impact for the adjudication criteria; instead, they urge using the disparate impact evidence they supplied for the 30-day letter for the adjudication criteria as well.  (*See* Pls. Opp. at 6).  Plaintiffs' concession conclusively establishes that they fail to satisfy commonality for the adjudication criteria.

In any event, plaintiffs' belated request (first raised in their class certification reply) to treat the disparate impact evidence they supplied for the 30-day letter as relevant to the adjudication criteria cannot be squared with their consistent treatment of the two policies as analytically separate.  Plaintiffs' class certification motion clearly sets off the 30-day letter and adjudication criteria as separate employment practices – and indeed, as separate subclasses:  "Plaintiffs seek to certify the following *classes* pursuant to Rule 23(b)(2) for the liability phase of the case and for class-wide injunctive relief: All African American and Latino applicants who . . . were harmed by one or both of the following employment practices:  (1) Defendants' use of the 30-day letter as a screening device; (2) Defendants' use of adjudication criteria to screen applicants."  (*See* Dkt. No. 176 at 26 (emphasis added; italics omitted); *see also, e.g.*, Dkt. No. 125 (2d Am. Compl. ¶ 12; *id*. at pp. 6, 9)).  Plaintiffs never claimed (nor could they) that the 30-day letter and the adjudication criteria were analytically inseparable.

Moreover, plaintiffs' post-hoc conflating of the 30-day letter and adjudication criteria issues is defeated by the Court's correct conclusion that it is "impossible for a single plaintiff to have been legally 'harmed' by both the 30-day Letter and the Adjudication Criteria."  (Op. at 43).  Under plaintiffs' new,

3

logically incoherent theory, all class members who received the 30-day letter were necessarily also harmed by the adjudication criteria, even if they never responded to the letter and therefore never had their response analyzed under those criteria.  This view is muddled and should be rejected.  Finally, the record establishes that, contrary to plaintiffs' suggestion, the criteria used to determine whether to send a 30-day letter were not identical to those used to screen applicant responses to the letter.  Otherwise, no recipient of a 30-day letter based on a potentially disqualifying conviction who properly responded could ever pass the adjudication criteria and be deemed suitable for employment – but in fact the *majority* of applicants who submitted responses *were* hired.  (*See* Dkt. No. 204 (LaMorte Ex. 27 at 104-05 (criteria used to send 30-day letters were different than the six versions of the adjudication criteria used to make final suitability determinations); LaMorte Ex. 28 at USA43541 (of the 95,000 applicants who timely responded to the 30-day letter, over 52,000 were deemed available for employment)).

Nor should the Court credit plaintiffs' invocation of the district court's conclusion that commonality is satisfied as to the adjudication criteria because "'the same set of objective Adjudication Criteria applied to all applicants nationwide.'" (Pls. Opp. at 6 (quoting Op. at 44)).  That the "same set" of a particular employment practice applied "nationwide" does not mean that all applicants can be lumped together in one class, regardless of the employment practice or criterion in question.  Commonality requires not just that the same *procedures* apply to all employees, but also that class members have suffered the "same injury," *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The significance of plaintiffs' expert's concession that portions of the adjudication criteria have harmed *no* class member – which plaintiffs' response ignores – cannot be overstated.  Simply put, being excluded from employment with the Census Bureau for life on the basis of a murder conviction – which plaintiffs concede is lawful – is not comparable to being excluded for five years based on a pattern of bad-check convictions – which plaintiffs argue is unlawful.  Relatedly, the racial impact (if any) of

4

different criteria for different crimes may also vary, if, for instance, African-Americans experience a higher or lower proportion of the total number of convictions for different crimes. Yet under the Court's ruling, the claims of *all* class members excluded pursuant to the adjudication criteria will be resolved by the claims of class representatives who may have been convicted of different crimes under different circumstances with different impacts. In these circumstances, commonality simply does not exist.

Thus, reconsideration is warranted based on plaintiffs' failure to show that any portion or all of the adjudication criteria caused a common racial impact class-wide.

### 3. The Government's Affirmative Defenses

Instead of responding to the government's showing that, contrary to the Court's mistaken impression, the government did *not* put forward its business necessity defense or conduct any type of job-relatedness analyses, but rather *responded* to and criticized the job-relatedness analysis offered by plaintiffs (*see* Br. at 17-18), plaintiffs merely repeat the Court's mistake. Specifically, plaintiffs mischaracterize the report of the government's expert Dr. James Outtz as opining "in one swoop" that Census's entire background check process was "job-related and justified by business necessity," and further that plaintiffs' expert – Dr. Kathleen Lundquist – refuted those defenses. (Pls. Opp. at 8).

The government emphasizes again that Dr. Outtz did *not* perform a job-relatedness study, as is clear from his report. (*See* Dkt. No. 202). Nor did Dr. Lundquist "refute" affirmative defenses put forward by the Census Bureau. In fact, the exact opposite occurred: the government submitted the report of Dr. Outtz in opposition to Dr. Lundquist's initial analysis, to point out, among other things, that she failed to account for critical Decennial Census goals and operations. (Br. at 17-18).

Moreover, it is common sense that the government's job relatedness and business necessity defenses will not be common class-wide. For example, deciding to exclude for life an applicant with a murder conviction necessarily involves different rationales from excluding for fifteen years an applicant

5

who committed fraud, or excluding for seven years someone with a pattern of driving while intoxicated. Plaintiffs strikingly fail even to address the government's argument that their own expert's analysis shows that the adjudication criteria do not rise or fall as one with respect to the question of business necessity. (*See* Pls. Opp. at 8-9). Yet Dr. Lundquist's concession that some of Census's adjudication criteria were job-related in fact confirms that certifying a class on the adjudication criteria as a whole *cannot* generate a common answer regarding business necessity. (*See* Br. at 15-17, 18).

Finally, plaintiffs do not adequately respond to the government's argument that the Court cannot certify a class based on the Census Bureau's business necessity defense without also finding that the racial impact of each of the challenged policies presents a common question, as resolution of the former issue would not be relevant to a certified class unless that class was comprised of individuals disparately impacted by the policy to which the business necessity defense applies. (Br. at 18-19). Both cases plaintiffs cite in opposition actually support the government's argument, since, in both, certification of a business necessity defense was backed by a finding that certification of whether the challenged policy caused a disparate impact was appropriate. (Pls. Opp. at 9 (citing cases)).

Thus, to the extent the Court determined that the Census Bureau's affirmative defenses presented a common question capable of class-wide resolution, reconsideration of that ruling is appropriate.

**B.    Reconsideration and/or Clarification Is Warranted of the Court's Rulings That Typicality Is Satisfied With Respect to the 30-day Letter and That the Letter Is Susceptible to Rule 23(b)(2) Relief**

Plaintiffs also fail to directly address the government's showing that the Court overlooked several categories of absent class members that present unique factual circumstances concerning the 30-day letter, whose situations are not typified by any named plaintiff and whose situations vary and could not be addressed by singular injunctive relief. (Br. at 19-21). Plaintiffs attack a straw man by asserting that the named plaintiffs of course need not be perfect "clones" of other class members (Pls. Opp. at 10), but

they ignore that the causes of and the remedies needed to redress the multiplicity of "harms" allegedly caused by the 30-day letter will necessarily have multiple permutations, varying with the diverse theories of injury that plaintiffs advance. (*See id*. at 10-12).

With respect to the 30-day letter, every class member's injury cannot be redressed by a single, "indivisible" injunction. *Wal-Mart*, 131 S. Ct. at 2557. In large part, that is because plaintiffs themselves have advanced so many different objections to the 30-day letter. Among other things, plaintiffs have argued that it was unnecessary for Census to place the burden on applicants to track down official documentation; that it was unnecessary to demand information about arrests in addition to convictions; that the letter unnecessarily failed to inform applicants of the rap-sheet information that triggered the letter; that the letter was erroneously sent to applicants on the basis of a "false-positive' match of biographical information with the FBI database; and that the 30-day response deadline was shorter than necessary. (*See, e.g.*, Dkt. No. 125 ¶¶ 16-21, 102-112).[3] But not every class member would have been injured for all of those reasons, and the Court may ultimately conclude that some of those critiques have merit, while others do not. Thus, any injunctive remedy necessarily could not be crafted so as to provide relief to every class member. Yet a court cannot craft an omnibus injunction containing an array of remedies, that will apply differently if at all to different class members, and then claim compliance with Rule 23(b)(2) on the theory (which may at any rate be factually incorrect) that every class member would be able to avail him or herself of at least one provision of the injunction. *Cf. Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012). Such an approach squarely conflicts with *Wal-Mart's* prescription that relief under Rule 23(b)(2) must be "indivisible."

---

[3] Of course, resolution of the claim of Houser – the only named plaintiff identified by the Court as claiming to be harmed by the 30-day letter – would not resolve the claims of other class members claiming to be harmed for any of the other reasons that plaintiffs have advanced and which are listed above, exemplifying why Houser's claim is not sufficiently typical of those of some portion of absent class members.

*Wal-Mart*, 131 S. Ct. at 2557.  Nor would a broad injunction generally ordering Census to devise a "job-related" screening process be permissible, because "an injunction must be more specific than a simple command that the defendant obey the law." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)).

As to the government's request for reconsideration and/or clarification concerning what it means for an applicant to "claim to be harmed" by the 30-day letter or adjudication criteria (Br. at 21-23), plaintiffs dodge the serious issues raised by recasting the government's arguments as relevant to damages, which are not yet at issue (Pls. Opp. at 13).  But the government's request is not about determining individuals' entitlement to relief, but about trying to determine who is in the class in the first place – an issue that the class certification ruling leaves utterly unclear.  This uncertainty further suggests the inappropriateness of any class certification at all, but, at a minimum, requires clarification to permit proper analyses and case management should the case progress, and, importantly, to enable potential class members to ascertain (now or in the future) whether this case applies to them.

## C. In Certifying a Rule 23(b)(2) and Rule 23(c)(4) Class, the Court Overlooked the Import of *Wal-Mart* and Failed to Consider the Ramifications of Its Decision on Absent Class Members

Plaintiffs also fail to adequately respond to the Government's showing that *Wal-Mart* does not permit the Court to certify a Rule 23(b)(2) class in conjunction with Rule 23(c)(4).  (*See* Br. at 24-25).

Although Plaintiffs state, in a conclusory manner, that "the Court fully appreciated the impact of" *Dukes,* and "cited the case multiple times in its Order," (Pls. Opp. at 14), they do not dispute that the Court did not address *Wal-Mart* in its analysis of the propriety of bifurcation under Rule 23(c)(4).

This omission masks a serious deficiency in the class certified by the Court, because in fact *Wal-Mart* cannot be squared with the Court's decision with respect to issue certification under Rule 23(c)(4).  In arguing that the Court's decision with respect to Rule 23(c)(4) is permissible, plaintiffs rely heavily

on the Second Circuit's decision in *Robinson*.  (*See* Pls. Opp. at 14-15).  *Robinson*, however, was fatally undermined by *Wal-Mart* and is without continuing precedential force.

To begin with, the Second Circuit itself has recognized that *Wal-Mart* abrogated *Robinson*'s reasoning about when certification of monetary claims under Rule 23(b)(2) is appropriate.  *See, e.g.*, *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) (recognizing that "*Dukes* abrogated *Robinson* as a test for (b)(2) certification").  Although *Wal-Mart* did not expressly consider the putative alternative of issue certification that plaintiffs now advance, *Wal-Mart* necessarily undermines the foundation upon which *Robinson's* holding about the propriety of (b)(2)/(c)(4) issue certification rests, as *Wal-Mart* unequivocally states that employment claims seeking monetary relief "belong in Rule 23(b)(3)," *Wal-Mart*, 131 S. Ct. at 2558.  Indeed, precisely because Rule 23(b)(2) "provides no opportunity for . . . class members to opt out, and does not even oblige the District Court to afford them notice of the action," *id.*, the Supreme Court unanimously concluded that Title VII "backpay claims should not certified under Rule 23(b)(2) *at all*."  *Id.* at 2560 (emphasis added); *accord id.* at 2561 (Ginsburg, J., dissenting) (agreeing with majority on this issue).

Plaintiffs argue that "Defendant's concern that . . . absent class members will 'forever lose' future claims for monetary relief rings hollow," (Pls. Opp. at 17), urging that Census's concern for absent class members should be dismissed because its interests are not aligned with those of absent class members.  But regardless of Census's motivations, the Court should be seriously concerned about the fact that this litigation would preclude any possible monetary claims of absent class members.  *See, e.g.*, *Wal-Mart*, 131 S. Ct. at 2559 (emphasizing "the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the class representatives' or go it alone – a choice Rule 23(b)(2) does not ensure that they have" (emphasis in original)); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999) "due process require[s] that" the absent class member "'receive notice plus an opportunity to

9

be heard and participate in the litigation'"). The Court should not authorize a handful of named plaintiffs here to litigate the liability predicate for innumerable absent class members' monetary claims without even giving them notice of the proceeding. Using Rule 23(c)(4) to create a liability class under Rule 23(b)(2) would ignore the rights and interests of absent class members, and Plaintiffs' argument that *Wal-Mart* can be avoided through the simple expedient of issue certification thus ignores the very due process concerns that were central to *Wal-Mart*'s holding. *See id.* at 2558-2559.

In explaining the implications of these due process concerns, *Wal-Mart* is unambiguous: "[I]ndividualized monetary claims belong in Rule 23(b)(3)." *Id.* at 2558. The Seiner article invoked by plaintiffs for the contention that *Robinson* has "continuing viability" (Pls. Opp. at 15), in fact only reinforces the truth that plaintiffs, in advocating use of Rule 23(c)(4) in conjunction with Rule 23(b)(2), are attempting an end-run around *Wal-Mart*'s holding that monetary employment claims need to proceed, if at all, under Rule 23(b)(3). *See, e.g.*, Joseph Seiner, *The Issues Class*, 56 B.C. L. Rev. (forthcoming 2015), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2420439, at 7 (urging use of "issue class certification . . . to *navigate around* the Supreme Court's recent decision [in *Wal-Mart*]" (emphasis added)); *id.* at 13 (arguing that issue certification can "help *circumvent* the *Wal-Mart* decision" (emphasis added)). The Court should resist plaintiffs' attempt to avoid the straightforward application of binding Supreme Court precedent.

## Conclusion

For the foregoing reasons, the Court should reconsider its order of July 1, 2014, as described herein and in the Government's initial motion papers.

Dated:   New York, New York
         August 26, 2014

                              PREET BHARARA
                              United States Attorney


                        By:   */s/ Tara M. La Morte*    ____
                              TARA M. La MORTE
                              LOUIS A. PELLEGRINO
                              ELIZABETH M. TULIS
                              Assistant United States Attorneys
                              Telephone: (212) 637-2746
                              Facsimile:  (212) 637-2702